**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard Rodney ROBISON (89–3724),**
**and James Roosevelt Smoot**
**(89–3520), Defendants–Appellants.**

Nos. 89–3520, 89–3724.

United States Court of Appeals,
Sixth Circuit.

Argued April 5, 1990.

Decided June 1, 1990.

Michael Burns, Robyn Jones and Bradley D. Barbin, Office of U.S. Atty., Columbus, Ohio, Gregory G. Lockhart (argued), Office of U.S. Atty., Dayton, Ohio, for plaintiff-appellee.

Steven M. Brown (argued), Columbus, Ohio, for defendant-appellant, James Roosevelt Smoot.

Steven S. Nolder (argued), Columbus, Ohio, for defendant-appellant, Richard Rodney Robison.

Before MARTIN and JONES, Circuit Judges, and FEIKENS, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Defendant James Roosevelt Smoot appeals his jury conviction and defendant Richard Rodney Robison appeals his guilty plea, each for conspiracy to distribute cocaine and possession with intent to distribute cocaine. For the following reasons, we affirm the conviction of Smoot and vacate the sentences of both defendants.

### I.

On March 9, 1988, the Columbus Police Narcotics Bureau executed a search warrant in a home in Columbus, Ohio. They seized many items, including approximately 27 grams of cocaine, four hand guns, drug paraphernalia, and syringes. Both Smoot and Robison were present in the house at the time. On November 3, 1988, the federal grand jury for the Southern District of Ohio returned an eight-count indictment charging seven defendants with various violations of the drug laws during a period from "on or about March 1, 1988 through and including May, 1988, the exact dates being unknown ..." J.App. (No. 89–3724) at 4. Specifically, it charged Smoot and Robison with conspiracy to maintain a place to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (1982) (count I); unlawful possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (count II); and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924 (count III). In addition, Robison was charged with using a person under eighteen years of age to aid or assist the unlawful distribution and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 845 (count VIII).

After a two-day trial, Smoot was convicted on all three counts on February 7, 1989. The United States Probation Department determined that Smoot's conduct warranted a base offense level of 12 with a criminal history category of III, resulting in a sentence of 15 to 21 months, plus a mandatory 5 year term of imprisonment as to the firearm charge. However, the United States District Court, Judge James L. Graham presiding, departed upward from the Sentencing Guidelines and sentenced Smoot to five years imprisonment on count I, five years imprisonment on count II (to run concurrently), and five years imprisonment on count III (to run consecutively).

On March 13, 1989, Robison entered a plea agreement whereby he would plead guilty to count I in exchange for the government's promise to not prosecute the other three charges. On that same day, the district court unconditionally accepted the plea agreement. The Federal Probation Department then prepared a presentence report, which set Robison's base offense level at 18 and his criminal history as category II. This would result in a sentencing range of 30 to 37 months under the Sentencing Guidelines. At the sentencing hearing of May 19, 1989, the district court expressed concern that the recommended sentence did not adequately reflect the seriousness of the crime. The court disclosed that the Probation Department was recommending an upward departure to 96 months, but that such a departure was too much under the plea agreement. Therefore, the court rejected the plea agreement that had been earlier accepted.

On June 9, 1989, the court accepted the plea agreement again and ordered the Probation Department to conduct additional investigation and develop additional information for use in sentencing. At the third sentencing hearing on July 28, 1989, the court heard testimony from co-defendant Leslie Gregory concerning the quantities of

---

* The Honorable John Feikens, Senior United States District Judge of the Eastern District of Michigan, sitting by designation.

narcotics involved in the case. On the basis of Gregory's testimony, the court arrived at a higher base offense level, taking into account the additional quantities of cocaine during the period of the conspiracy. In addition, the court increased the criminal history category to VI on the basis that Robison should be considered a career offender. The new base offense level and criminal history category resulted in a sentencing range of 210 to 260 months. However, due to Robison's cooperation in other cases, the court decreased the sentence to 144 months.

## II.

Smoot attacks two aspects of his trial: admission of certain testimony and the alleged amendment of the indictment.

### A.

■ Smoot objects to the admission of part of the testimony of alleged co-conspirator Jewell Cochran on the grounds that such testimony should have been excluded under Fed.R.Evid. 404(b). We review the district court's admission of evidence pursuant to Rule 404(b) under an abuse of discretion standard. *United States v. Ebens*, 800 F.2d 1422, 1433 (6th Cir.1986). Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive ... [and] intent...." The decision on admission of the evidence requires a two-part analysis:

> 'First, the court must decide whether the evidence would serve a permissible purpose such as one of those listed in the second sentence of Rule 404(b). If so, the court must consider whether the probative value of the evidence is outweighed by its potential prejudicial effect.'

*United States v. Vance*, 871 F.2d 572, 575–76 (6th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989) (citation omitted).

In the instant case, Cochran testified about previous occasions where she sold drugs to Smoot, the most recent having been October 1987, five months before the indicted conspiracy began. Cochran also testified that Smoot informed her that he would sell the cocaine that she supplied to him. On two different occasions the district court issued limiting instructions to the jury concerning the testimony. On appeal, Smoot argues that Cochran's testimony was impermissible character evidence covering a time period which is remote and irrelevant to the indictment. As such, he maintains that this admission constitutes reversible error. In addition, Smoot objects to the similar testimony of Leslie Gregory as impermissible character evidence.

We believe that the evidence was properly admitted by the district court because it concerns Smoot's intent. Smoot's defense was that he was only a user of drugs. However, evidence indicating previous deals suggests that his intent was not merely to use. In *United States v. Rodriguez*, 882 F.2d 1059, 1064–65 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990), this court decided that evidence relating to a previous cocaine transaction was admissible under Rule 404(b) because it was probative as to defendant's intent to distribute the cocaine. Similarly, the testimony in the instant case is more probative than prejudicial, especially given the two limiting instructions given by the district court.

### B.

■ Smoot also argues that the trial court's instruction concerning the firearm count was improper. We review whether there was an amendment to the indictment *de novo*. *United States v. Aguilar*, 756 F.2d 1418, 1421 (9th Cir.1985). The original count three of the indictment, as read to the jury, charged that defendants "did knowingly carry a firearm, that is, a 357 Smith and Wesson revolver, serial number AJY 7855, during and in relation to drug trafficking crimes." J.App. (No. 89–3520) at 6. During its instructions to the jury, the court noted that "it is not necessary

that the government prove that the defendant carried the exact firearm alleged in the indictment; rather, it is sufficient that the government prove that the defendant carried any firearm." *Id.* at 47–48. The court also instructed the jury that any defendant would be guilty if any co-conspirator carried any firearm and the defendant had knowledge of this act. Smoot alleges that these instructions constitute a constructive amendment to the indictment.

■ There are two types of modifications of an indictment—an amendment and a variance:

'An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.'

*United States v. Ford,* 872 F.2d 1231, 1235 (6th Cir.1989) (citation omitted). An amendment is considered *per se* prejudicial while a variance is not reversible .error unless the accused has proven a prejudicial effect upon his defense. *United States v. Hathaway,* 798 F.2d 902, 910–11 (6th Cir. 1986). "[A] variance rises to the level of a constructive amendment when 'the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *Ford,* 872 F.2d at 1236 (quoting *Hathaway,* 798 F.2d at 910). In *Ford,* the original indictment had charged the defendant with possession of a firearm "on or about September 28, 1987." However, the court instructed the jury that it could find the defendant guilty if he possessed the firearm at any time between November 1986 and September 1987. The Court of Appeals held that the instruction was a constructive amendment, which constituted reversible error.

■ In the instant case, four firearms were found in the police search of Robison's residence. The evidence at trial suggested that the gun carried was a shotgun, not a .357 Magnum. We believe that the district court's instructions were a variance, not a constructive amendment, because the specific type of firearm used or possessed by the conspirator is not an essential element of the crime. The test for reversible error is whether the variance affected the "substantial rights" of Smoot. We think that his defense of being a drug user, not a drug dealer, is not substantially affected by the particular type of firearm with which he was convicted of having an involvement.

### III.

Smoot challenges the district court's upward departure on counts one and two (count three for firearms results in a five year sentence to be served consecutively in either case). The Probation Office found that the range for sentencing Smoot under the Guidelines was 15 to 21 months. However, the district court upwardly departed and imposed a sentence of five years on each of the first two counts, to be served concurrently.

The court gave several reasons for the upward departure. First, it noted the presence of a minor involved in the drug operation. Second, the court stated that while the Guidelines provided for including relevant conduct, its determinations centered around adding up the quantities of drugs. The court believed that the Guidelines do not take into consideration "a continuing operation in which significant quantities of drugs may be sold." J.App. (No. 89–3520) at 71. Third, the court noted that it "does not believe that the Sentencing Commission adequately considered the assiduous nature of crack cocaine ..." *Id.* at 72. Fourth, the court stated that Smoot "has a tendency for using guns and for engaging in violence ..." *Id.* at 77. The court concluded by noting that "[u]nder all these circumstances, to consider a sentence of 21 to 27 months, I just think the community would be outraged and I think that the

facts of the case, just by their nature, contain elements which were not adequately considered by the guidelines...." *Id.*

The Guidelines note the circumstances under which departure is appropriate:

Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to the degree substantially in excess of that which is ordinarily involved in the offense of the conviction.

*United States Sentencing Commission Guidelines Manual,* § 5K2.0 at 5.36 (1988). In *United States v. Joan,* 883 F.2d 491, 494 (6th Cir.1989), this court set forth a three-step test to determine whether an upward departure is reasonable:

First, we assay the circumstances relied upon by the district court in determining that the case is sufficiently "unusual" to warrant departure.... Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case.... Third, ... the direction and degree of departure must, on appeal, be measured by a standard of reasonableness.

*Id.* (adopting the First Circuit's test from *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)). Where there is an offense for which the defendant is not charged, evidence of such an offense can be included in the sentencing determination as "relevant conduct" under section 1B1.3(a)(1), to be taken into account when determining the base offense level. *See* Commentary to section 1B1.3 at 1.19 ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range.") Even then, in order to be considered at the evidentiary stage, there must be proof by a "preponderance of the evidence." *United States v. Silverman,* 889 F.2d 1531, 1535 (6th Cir.1989). Under the Sentencing Guidelines, the district court's findings of fact regarding relevant conduct are reviewed on a "clearly erroneous" basis. 18 U.S.C. § 3742(d).

We now apply the *Joan* test to the four factors invoked by the district court. We believe that the district court's first factor, involvement by a minor, is not an appropriate reason for departure. The involvement of a minor in a drug offense can be considered as relevant conduct. However, upon review of the record, we believe that there is not a preponderance of evidence connecting Smoot to the employment of a minor. The indictment for involvement of a minor was of Robison, not Smoot. Thus, we hold the district court's finding that Smoot involved a minor in a drug operation to be clearly erroneous. The second factor, that the Guidelines do not adequately consider continuing operations, falls under the category of relevant conduct. This is a proper rationale for departure, assuming that there is a preponderance of the evidence suggesting that this was an ongoing operation and that the amounts of drugs transacted are not adequately included in the base offense level. We believe that the evidence supports the finding that there was an ongoing operation, though it is not clear to what extent this factor was responsible for the departure. The third factor, the harm of crack in our communities, is clearly impermissible. In *United States v. McDowell,* 902 F.2d 451, 455 (6th Cir.1990), the court ruled that "the danger presented by crack houses in general is [not] the type of special danger" requiring a departure. The Sentencing Commission has established penalties for crack transactions; it is not up to individual judges to determine whether those penalties are too harsh or too lenient as a general matter. In any event, Smoot was convicted of possession and distribution of cocaine, not crack. Crack is a derivative of cocaine, not directly at issue in this case. Finally, the district court considered Smoot's propensity for violence and offenses using guns. This is a legitimate reason for an upward departure under section 5K2.6 of the Guidelines, which state that "[t]he extent of the increase [departure] ordinarily should depend on the dangerousness of the weapon, the manner in

which it was used, and the extent to which it endangered others." In light of the facts that Smoot did not fire the gun and that he will serve a five-year (consecutive) sentence for the firearm count, we hold that the Guidelines already took into account the firearms aspect of the crime. As such, it was an improper basis for departure.

Thus, we believe that Smoot's sentence should be vacated and remanded, with instructions that three of the factors are not permissible reasons for departure on the basis of the evidence before the court. The district court may depart on the grounds of continuing operation although the extent of any such departure remains subject to the standard of reasonableness.

## IV.

Robison also attacks his sentence on the basis that the district court made an improper upward departure. The original presentence report recommended a sentence of 30 to 37 months, given a base offense level of 18 and a criminal history category of II, with a recommendation to upwardly depart to a 96 month sentence. The district court rejected this determination and increased the sentence in two ways. First, the court increased the base offense level to 30 on the basis of the testimony of Gregory. Gregory stated that during 1987, when she lived with Robison, approximately five to seven ounces of cocaine per week were distributed from the home. She also testified that from fall 1987 through May 1988, which includes the period of the conspiracy, approximately three to four ounces of cocaine were distributed per week. She did state that she was merely guessing in arriving at these quantities. She admitted that during this time, she was a heavy drug user, injecting or smoking at least seven grams of cocaine per day. Gregory also admitted to periodic blackouts and a general lack of memory for the time period about which she was testifying. Furthermore, she testified that she was pressured into giving an estimate of the drug amounts, despite her vague recollections. Relying on Gregory's guess of

three to four ounces of cocaine distributed per week, the court arrived at a median figure of three and a half ounces and then calculated a total amount of "420" ounces of cocaine sold during the period of the conspiracy, resulting in the base offense level of 30. Second, the court found that Robison was a "career offender," which resulted in adjusting the criminal history category to VI and adding two points to the base offense level. This new calculation yielded a range of 210 to 260 months, though the court made a downward adjustment to 144 months to take into account Robison's cooperation.

### A.

 Robison argues that the court improperly calculated the quantity of drugs for use in determining the base offense level. This circuit has stated clearly that quantities of drugs that are not part of the count of conviction may be included in determining the base offense level as long as the drugs were "part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Smith*, 887 F.2d 104, 107 (6th Cir.1989) (quoting section 1B1.3(a)(1) of the Guidelines). However, the court also noted that due process requires that facts used for sentencing must have " 'some minimum indicium of reliability beyond mere allegation.' " *Id.* at 108 (citation omitted). In addition, this court has required that proof presented at sentencing hearings satisfy a "preponderance of the evidence" standard. *See Silverman*, 889 F.2d at 1535.

We find that Gregory's testimony was not sufficiently accurate to permit the district court to aggregate a specific quantity of cocaine in determining the base offense level. Gregory was admittedly a heavy drug user and subject to periods of memory loss. In addition, she admitted that the time period at issue in the case was "a very hazy time because [of] the grade level of usage [of drugs] on [her] part." J.App. (No. 89–3724) at 84. She initially could not fix an estimate of the quantities of drugs transacted and testified that she felt pressured into doing so. *Id.* at 81. Moreover,

Gregory admitted on cross-examination that "it was totally a guess," *id.* at 82, and that she had "no factual basis" for assigning a number to the quantities of drugs. *Id.* at 83. Because the preponderance of the evidence does not establish a total quantity of "420" ounces, we hold that the district court's finding was clearly erroneous.

### B.

Under section 4A1.3 of the Guidelines, a court may upwardly depart if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." In the instant case, Robison was convicted of aggravated trafficking in drugs in 1977, but this conviction was not included in the section 4A1.2(e) calculation of criminal history because it was more than ten years old. Robison was also convicted of drug abuse and trafficking in 1983. On June 9, 1989, the government was satisfied that Robison was not a "career offender." Under section 4B1.1, a convicted defendant is a career offender if (1) he was at least 18 years of age at the time of the offense; (2) the instant offense is a felony that is either a crime of violence or controlled substances; and (3) the defendant has at least two previous felony convictions of either a crime of violence or a controlled substance offense. The Commentary to section 4B1.2 notes that the provisions of section 4A1.2(e) concerning the ten-year limitation are applicable to the career offender section.

At the July 28, 1989 hearing, evidence was entered as to a Receiving Stolen Property charge to which Robison had recently pled guilty in Franklin County Common Pleas Court. However, because no sentence had yet been imposed, this crime would not be counted under the Guidelines. The district court decided that it would depart from the Guidelines based upon the crime of 1977 because it believed that "that conviction would have been countable but for the fact that Mr. Robison received a

real break from the sentencing judge in that case." J.App. (No. 89–3724) at 98. The district court added that:

> COURT: We wouldn't be penalizing [Robison] because he got a break. We are simply saying that he shouldn't have gotten that break and we are not going to give him the benefit of that same doubt that judge did, because now we know what his record is.
>
> MR. NOLDER [counsel for Robison]: The fact remains, maybe he got a break, I don't know. If it is the Court's opinion he got a break, fine, but under the guidelines, as they are drafted, as the legislature has enacted them, he has a criminal history of II and I feel the legislators look prospective at everything and maybe don't have the benefit of a case by case analysis, but they are trying to treat offenders of like kinds the same.

*Id.* at 109.

We believe that the departure based upon the seriousness of Robison's criminal history was not reasonable. While the district court is certainly authorized under section 4A1.3 to depart from the criminal history category, it must supply particular reasons for the departure. Moreover, "a sentencing court must first look to the next highest criminal history category before otherwise departing from the [G]uidelines." *United States v. Kennedy,* 893 F.2d 825, 829 (6th Cir.1990). In *United States v. Michel,* 876 F.2d 784, 786 (9th Cir.1989), the district court upwardly departed on the ground that defendant was close to career criminal status. The Ninth Circuit vacated the sentence, noting that the district court must present more than a conclusory set of reasons for a departure. It must "identify the specific aggravating circumstances present" and find "that the Sentencing Commission inadequately considered those circumstances in formulating the Guidelines." *Id.* In the instant case, we hold that the departure was not reasonable in light of the lack of actual reasons for such a departure and the failure of the district court to look to the next highest criminal history category. The district court cannot arbitrarily change the requirements for career offender status established by the

Sentencing Commission simply because it feels that Robison "got a break" in 1977. We conclude by noting that the Sentencing Guidelines were designed to provide more uniformity in sentencing by proscribing ranges appropriate to similar defendants. Whether a judge agrees or disagrees with the Guidelines, it is his duty to abide by those ranges and depart only in the "unusual" cases where the Guidelines do not adequately take into account the nature of the crime. In short, it is the *United States Sentencing Commission* Guidelines, not individual judges, that now dictate the appropriate range of sentences in a case.

## V.

For the above stated reasons, we AFFIRM the conviction of Smoot, VACATE both Smoot and Robison's sentences, and REMAND for resentencing consistent with this opinion.