914 F.2d 258
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberta ANDERSON, Defendant-Appellant.
 No. 90-1254.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1990.
 
 Before NATHANIEL R. JONES and BOGGS, Circuit Judges, and GIBBONS, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant Alberta Anderson appeals the judgment of conviction and sentence entered upon a guilty plea to conspiracy to distribute cocaine. For the following reasons, we affirm.
 
 I.
 
 2
 On June 30, 1989, Anderson was indicted on one count of conspiracy to distribute over 500 grams of cocaine base ("crack") in violation of 21 U.S.C. Secs. 841(a)(1) and 846 (1988). On September 7, 1989, Anderson pled guilty to the indictment in the United States District Court for the Eastern District of Michigan, Judge Stewart A. Newblatt presiding.
 
 
 3
 Anderson admitted in her plea hearing that in April 1989 she rented a room in her house in Flint, Michigan to a man and a woman from Detroit, Antoine Piner and Leesha Barnes, who were introduced to Anderson through her niece. Anderson suspected that Ms. Barnes and Mr. Piner were dealing in cocaine because her niece was doing so. J.App. at 55. As a result, she asked Barnes and Piner about their involvement in cocaine, and they denied any such activity. Shortly thereafter, Anderson noticed that Barnes and Piner were carrying a black briefcase, which they handled as if it contained something valuable. She suspected that the briefcase contained either money or cocaine. Id. at 57. In addition, Anderson saw rock cocaine in the possession of either Barnes or Piner. The two were paying Anderson $50.00 per day to rent the room. During that five-week time period, Anderson noticed the drugs, but continued to allow Barnes and Piner to stay in her house.
 
 
 4
 Under the plea agreement, the following arrangements were made with respect to the sentence:
 
 
 5
 2. Defendant is entitled to a reduction of two levels in the combined adjusted offense level, under Section 3E1.1 of the sentence guidelines, because defendant has accepted responsibility for the offense as demonstrated by defendant's promise as stated in paragraph 9 of this agreement.
 
 
 6
 3. Pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure the parties agree that any sentence of incarceration shall not exceed the lower limit of the guideline range that the court finds to be applicable....
 
 
 7
 4. Upon completion of the cooperation and testimony required from defendant by this agreement, the government will move the court to depart from the guideline sentence, as permitted by Sec. 5K1.1 of the Guidelines Manual, and impose a sentence not exceeding 144 months.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 9. Defendant promises to truthfully disclose all information with respect to the activities of defendant and others concerning all matters about which the United States Attorney's Office makes inquiries....
 
 
 11
 Id. at 6-8. At the sentencing hearing, the court determined that more than 500 grams of crack was involved in the conspiracy, giving a base offense level of 36. With the two-point reduction for acceptance of responsibility, the offense level was 34, which results in a sentencing range of 188-235 months.
 
 
 12
 The court found that even though Anderson alleged that she had little knowledge of the drug activities, her statement to the Bureau of Alcohol, Tobacco and Firearms (BATF) agents on June 19, 1989 indicates much more knowledge. Specifically, Anderson stated to the agents that she observed six clear plastic baggies filled with crack cocaine on a couple of different occasions. Id. at 67. In addition, she told the agents that she observed one of the co-conspirators carrying a 9-millimeter semi-automatic pistol and a .357 Magnum revolver on different occasions, and that on ten different occasions, she destroyed ledgers that contained street names and money transactions from Barnes and Piner's dope houses in Flint, Michigan. Id. at 68. The court found that Anderson is "responsible for what may reasonably be expected to have taken place even if she may not have known the precise amount." Id. at 69. Then, upon motion of the Assistant U.S. Attorney to depart downward based upon Anderson's cooperation, the court sentenced Anderson to 68 months imprisonment, with five years supervised release.
 
 II.
 
 13
 We review the factual findings of the district court with respect to quantity of drugs under a "clearly erroneous" standard. 18 U.S.C. Sec. 3742(e)(4); United States v. Robison, 904 F.2d 365, 370 (6th Cir.1990). The government must prove contested issues in a sentencing hearing by a "preponderance of the evidence." 904 F.2d at 370. Anderson alleges that the district court's findings regarding the appropriate base offense level are clearly erroneous. Thus, she contends that even though the court did make a significant downward departure, the base offense level, which acted as a reference point for the departure, is still relevant. Specifically, Anderson contends that her role in the conspiracy was so minor that she cannot be held accountable for the quantities of drugs involved in the entire conspiracy.
 
 
 14
 Application note 1 to section 2D1.4 of the Guidelines provides that:
 
 
 15
 [i]f the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.
 
 
 16
 Guidelines Manual at 2.48. Anderson argues that her part in the conspiracy was minimal and that she had no knowledge of the entirety of the activities of the persons who rented a room in her house. As such, she maintains that her base offense level should have been lower.
 
 
 17
 The government first responds that Anderson has waived any challenge to the computation of the base offense level because she failed to contest the guidelines calculation at the sentencing hearing. Although defendant filed a written objection to the Presentence Report's (PSR) calculation of a base offense level of 36, the court overruled this objection at the hearing. After noting its belief that a base offense level of 36 was appropriate based upon Anderson's reasonable expectations, the court asked her counsel: "You don't dispute with those rulings and that application of the guidelines." Her counsel responded, "I wish I could but I can't." J.App. at 69.
 
 
 18
 We are not persuaded that Anderson has waived her argument concerning the computation of the base offense level. The only case cited by the government in support of its position that Anderson waived her opportunity to object is United States v. Velasquez, 868 F.2d 714, 715 (5th Cir.1989). In Velasquez, the Fifth Circuit ruled that a defendant waives his procedural objections to the sentencing hearing by failing to object at the time of the hearing. We find Velasquez is inapposite here because the defendant in Velasquez did not raise any objection to the PSR until the appeal. In this case, although Anderson's counsel did not specifically preserve that issue for review, he did file a written objection to the PSR's calculation of the base offense level and did make an argument at the hearing with respect to this issue. We find this objection sufficient to preserve the issue of the base offense level for review.
 
 
 19
 The government also argues that the district court's finding on Anderson's base offense level was proper. The government contends that in light of Anderson's knowledge of Barnes and Piner's cocaine dealings, sightings of weapons, receipt of a large amount of money for rent, and the fact that she drove coconspirator Edgar Pace to several crack houses to deliver new sales of cocaine, the distribution of over 500 grams of crack was "reasonably foreseeable" to her. The government cites United States v. Sailes, 872 F.2d 735, 738 (6th Cir.1989), in which a mother allowed her son to use her house as a base of operations for his cocaine business, and she actively assisted him in this enterprise. The court held that her base offense level could be based upon the full amount of the cocaine involved under section 1B1.3 of the Guidelines. See also United States v. Paulino, 873 F.2d 23, 25 (2d Cir.1989) (upheld imposition of base offense level related to full amount of cocaine in conspiracy on a defendant who was the lookout).
 
 
 20
 Anderson correctly argues that her conduct was not as active as the defendants involved in Sailes and Paulino. However, the relevant question is still whether or not she could have "reasonably foreseen" the conduct of her co-conspirators. In view of Anderson's knowledge of part of her co-conspirators' cocaine operation, her assistance in making drug deliveries, and her renting a room to her co-conspirators at an extraordinary price, we conclude that the trial court's factual findings that a preponderance of the evidence suggested that Anderson could reasonably foresee the extent of the conspiracy are not clearly erroneous.
 
 III.
 
 21
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Julia S. Gibbons, United States District Judge of the Western District of Tennessee, sitting by designation