991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maurice Lonell POINTER, Defendant-Appellant.
 No. 92-1161.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1993.
 
 Before NELSON and BOGGS, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Pointer was found guilty of narcotics offenses after a jury trial. On appeal, he makes three assignments of error: first, that his statements to the police were inadmissible because he was in custody and not given Miranda warnings; second, that the trial judge erred in calculating his sentence; and third, that the verdicts were inconsistent. We affirm the district court.
 
 
 2
 * Pointer came to the attention of law enforcement officers on September 21, 1990, when a man named Christopher Cords was cooperating with narcotics investigators in Berrien County, Michigan. Cords spoke to Pointer on the telephone, and, under the direction of law enforcement personnel, arranged for the delivery of cocaine. In the early morning hours of the following day, Shannon Sherman and Andre Brown arrived at Cords's residence with four ounces of cocaine that they said Pointer had given them.
 
 
 3
 On September 26, 1990, Lieutenant Renkawitz, of the Berrien County Sheriff's Department, went to the house of a friend of Pointer's, Gaide Washington, accompanied by several other officers. He wanted to question Pointer about his association with Sherman and Brown. Pointer was sitting on the front porch. Lt. Renkawitz approached him, told Pointer that he wanted to talk to him, and asked Pointer to accompany him to the station. Lt. Renkawitz told Pointer that he was not under arrest. Pointer was not given Miranda warnings at any time.
 
 
 4
 While at the station, Pointer made some inculpatory statements. Pointer claimed he was then handcuffed, though the government disputes that. However, both the government and Pointer agree that he said he no longer wished to speak with the officers. And both agree that Pointer was not charged with any offense and that he left the station after he signed his statement.
 
 
 5
 In April 1991, Pointer was arrested for distributing cocaine. Two superseding indictments followed, with the ultimate 13-count indictment returned against Pointer and others on July 25, 1991. Pointer was charged with: conspiracy to possess cocaine with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), 843, and 846 (Count 1); distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts 2, 4 and 5); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 6); attempt to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 7); and use of a communication facility to aid in the conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 846 (Counts 8-14). On November 26, 1991, a jury found him guilty of Counts 1, 4, 5, 9, 10, 11 and 13. Three co-defendants tried with Pointer were found not guilty.
 
 
 6
 Pointer was sentenced to 240 months in prison on Counts 1, 4 and 5. He was sentenced to 48 months on Counts 9, 10, 11 and 13. All sentences were concurrent.
 
 II
 
 7
 * A person is entitled to Miranda warnings when taken into custody or otherwise deprived of freedom. Miranda v. Arizona, 348 U.S. 436 (1966); United States v. Peete, 919 F.2d 1168, 1177 (6th Cir.1990). The test is from the perspective of a reasonable, innocent person. That is, if a reasonable, innocent person in the situation in which the defendant found himself would believe that he was not free to leave, he must be given Miranda warnings before he can be questioned. Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3152 (1984); United States v. Mahar, 801 F.2d 1477, 1499 (6th Cir.1986); United States v. Reynolds, 762 F.2d 489, 493 (6th Cir.1985).
 
 
 8
 We review the district court's custody determination under the "clearly erroneous" standard. Mahar, 801 F.2d at 1500 n. 38; United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). The trial court's decision that Pointer was not in custody was not clearly erroneous.
 
 
 9
 Before trial, Pointer moved to suppress his statements to Lt. Renkawitz. The trial judge held a suppression hearing, after which he said that he found Lt. Renkawitz's testimony more credible than Pointer's.[1] In particular, the judge believed that Lt. Renkawitz told Pointer he was not required to go to the station.
 
 
 10
 Pointer insists that no reasonable black man, when faced with police officers, would reject an "invitation," no matter how friendly, to go to a police station. We disagree. Pointer refused a police request to be fingerprinted and photographed, after he had already accompanied the officers to the station and had given an inculpatory statement. We note that he had no compunction at that time, after he had been fully "coerced," in refusing the police. His behavior belies his claim of intimidation.
 
 
 11
 Pointer claims the following coercive factors combine to create custody: the officers were armed, there were several of them, and it was 10:00 p.m. Police officers routinely carry sidearms. To argue that being confronted with plainclothes officers in possession of holstered and concealed handguns necessarily triggers a finding of custody would require a finding of custody for every contact with the police.
 
 
 12
 Pointer complains that he was so outnumbered that he was intimidated. In some circumstances, such as four officers surrounding a subject on a deserted highway at 2:00 a.m., custody might be triggered. But here, Pointer was on the porch of a friend's house, the friend was at home, and only two of the officers approached the house. This situation is not indicative of the isolation and coercion that would trigger Miranda concerns.
 
 
 13
 Pointer says that it was so late in the evening that he felt he was under pressure to go with the police. But it is hardly as though Pointer were routed from a sound sleep. He was sitting on the porch, taking the evening air. To suggest that 10:00 p.m. was too late for police to stop by, particularly when they sought someone in the often nocturnal job of cocaine dealer, is disingenuous.
 
 
 14
 Pointer's complaints about the police conduct at the station include that the interview at the station took a long time and that it was conducted in a small and unpleasant interview room. The officers testified Pointer was at the station for 20-30 minutes. Pointer claimed it was more like 1 1/2 hours. In either event, in view of the fact that, as Lt. Renkawitz testified, the door to the interview room was left ajar, and Pointer was offered refreshment, the time period is less significant. And, given that Pointer was free to leave, the time period is wholly irrelevant. The fact that Pointer and the police were not in lavish surroundings is also not relevant.
 
 
 15
 Of course, Pointer does not argue that each item individually is sufficient to trigger custody, but rather that all of them in aggregation do. Once again, we disagree. None of these factors adds enough weight that a finding of custody is required.
 
 
 16
 Pointer also insists that the trial judge improperly allocated the burden of proof, because it is the government's responsibility to prove voluntariness. Pointer misses the first requirement of Miranda. That is, the government need not address voluntariness until there has been a determination that the subject was in custody. The whole point in this case is that Pointer was never in custody. Therefore, he was not entitled to Miranda warnings, and voluntariness was not at issue.
 
 B
 
 17
 Pointer contends that the trial court improperly calculated that his conduct merited a base offense level of 32 and then improperly enhanced the sentence both for possession of a firearm (2 levels) and for being the organizer of a conspiracy (4 levels). He also contests the trial court's refusal to grant a two-level reduction for acceptance of responsibility.
 
 
 18
 A district court's factual findings regarding a sentence will not be set aside unless they are clearly erroneous. United States v. Sivils, 960 F.2d 587, 596 (6th Cir.), cert. denied, 113 S.Ct. 130 (1992). The trial judge is entitled to consider evidence not admitted at trial, but which has sufficient indicia of reliability to be credible. United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990), cert. denied, 112 S.Ct. 1504 (1992); United States v. Robison, 904 F.2d 365, 371 (6th Cir.), cert. denied, 111 S.Ct. 360 (1990); United States v. Silverman, 976 F.2d 1502, 1504 (6th Cir.1992) (en banc), cert. denied, 61 U.S.L.W. 3651 (Mar. 22, 1993). The "preponderance of the evidence" standard is used for making determinations at sentencing. United States v. Gonzalez, 929 F.2d 213, 216 (6th Cir.1991).
 
 
 19
 In determining the offense level, the trial court aggregated the cocaine attributed to Pointer by a variety of sources. In addition, the cocaine distributed by other members of the conspiracy was included, chargeable to Pointer as a co-conspirator. We cannot say that the trial court's findings were clearly erroneous.
 
 
 20
 The court is entitled to consider the firearm because its presence creates a presumption that its possession is connected to the offense. Pointer contends the testimony regarding possession of a firearm was inherently incredible because the witness was an admitted drug user. However, Pointer was not able to show that the witness had either mental incapacity or blackouts, as required by Robison to discredit his testimony. Robison, 904 F.2d at 371.
 
 
 21
 Pointer claims that the government did not prove there was only one overarching conspiracy as opposed to a number of smaller, independent conspiracies. However, only one conspiracy was argued and proven at trial. The fact that all the conspirators did not know one another is irrelevant. Furthermore, Pointer asked for, and received, an instruction to the jury on multiple conspiracies. The jury rejected Pointer's theory. Pointer has no grounds now for re-asserting the argument.
 
 
 22
 The district court was also not clearly erroneous in refusing to allow a reduction for acceptance of responsibility. Pointer admitted only to minimal distribution of cocaine, not to the substantial distribution the court found him responsible for. Thus, he has not acknowledged responsibility.
 
 C
 
 23
 Pointer claims that he was improperly convicted of the illegal use of a communications facility for the purpose of drug trafficking, in Counts 10, 11, and 13. He improperly conflates two arguments. First he says there was insufficient evidence to support these convictions because he was acquitted of some underlying substantive charges and some other telecommunications charges. He argues that these acquittals are inconsistent with the guilty verdicts on Counts 10, 11 and 13.
 
 
 24
 It is not our function to reweigh the evidence or retry the case. The verdict below must be upheld if there is sufficient evidence, taking the evidence in the light most favorable to the government, for any rational trier of fact to have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); United States v. Martin, 920 F.2d 345 (6th Cir.1990). Furthermore, because he did not move for acquittal on Counts 10, 11 or 13, he did not properly preserve the sufficiency of the evidence issue for appeal. United States v. Rodriguez, 882 F.2d 1059, 1063 (6th Cir.1989), cert. denied, 493 U.S. 1084, 110 S.Ct. 1144 (1990). Therefore, we review only for a manifest miscarriage of justice--and we find none.
 
 
 25
 Second, as a matter of law, inconsistent verdicts are not a reason to direct an acquittal. It is at least as likely that the defendant had the benefit of an improper acquittal as that he was unluckily convicted. Dunn v. United States, 284 U.S. 390, 393 (1932). United States v. Powell, 469 U.S. 57, 105 S.Ct. 471 (1984).
 
 
 26
 [I]nconsistent verdicts--even verdicts that acquit on a predicate offense while convicting on the compound offense--should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.... Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.
 
 
 27
 Powell, 469 U.S. at 65, 105 S.Ct. at 476-77.
 
 
 28
 Furthermore, the verdicts in this case are not necessarily inconsistent. Even if the actual delivery did not occur, the telephone calls might well have facilitated the conspiracy. For example, contacting a co-conspirator for information on the custody status of another member of the conspiracy may provide information enabling a conspirator to make relevant and important decisions.
 
 
 29
 For the reasons given above, we AFFIRM the judgment of the district court.
 
 
 
 *
 William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 One example the judge cited was that, at the suppression hearing, Pointer said that he signed his statement in the middle of the page, and that Lt. Renkawitz later added two paragraphs that he (Pointer) had not acknowledged and which just happened to end at the spot where he had signed his name