**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                  No. 01-4170

BRYANT JONES,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-00-240)

Argued: April 5, 2002

Decided: May 16, 2002

Before WILKINSON, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Richard Joseph Link, Jr., Silver Spring, Maryland, for
Appellant. Justin W. Williams, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States
Attorney, Alessandra DeBlasio, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

A jury convicted Bryant Jones on all three counts of an indictment charging him with conspiracy to commit bank robbery, *see* 18 U.S.C.A. § 371 (West 2000) ("Count I"), bank robbery, *see* 18 U.S.C.A. §§ 2113(a), (d) (West 2000) ("Count II"), and using and carrying a firearm during and in relation to a crime of violence, *see* 18 U.S.C.A. § 924(c) (West 2000) ("Count III"). Jones appeals, and although he is represented by counsel on appeal, we previously granted Jones leave to file a pro se informal brief. By way of his formal and informal briefs, Jones raises numerous assignments of error. We find his contentions meritless and affirm his convictions and sentences.

I.

We will set out briefly only those facts necessary to understand the primary issues Jones raises on appeal. The charges against Jones were based on the armed robbery of a Central Fidelity Bank in Prince William County, Virginia, by Jones and his associates. At trial, the district court allowed the prosecution to introduce evidence that Jones had been involved with some of the same associates in the robbery of a Hechinger's department store approximately one month prior to the Central Fidelity robbery, and also allowed evidence that approximately one month after the charged robbery, Jones had played a part in disposing of the .380 handgun used in the Central Fidelity robbery ("the gun disposal evidence"). All three of Jones's co-conspirators testified against him at trial, including John Lewis, who had been the first to confess to the Central Fidelity robbery and whose confession implicated all of his alleged co-conspirators, including Jones. In cross-examining Lewis, defense counsel suggested that Lewis was fabricating his testimony against Jones in order to obtain favorable treatment for himself. Accordingly, the prosecution, over defense

counsel's objection, called FBI Agent Paul Timko, to whom Lewis had confessed, to testify that Lewis's prior statements to Agent Timko were consistent with Lewis's trial testimony.

After closing argument, the court gave the jury its instructions — instructions that counsel agreed were correct — and the jury retired to deliberate. During deliberations, because Count III of the indictment specified that the weapon used or carried was a .380 semi-automatic pistol, the court received a question from the jury, asking whether it needed to specifically find that such a weapon was used. After hearing argument from counsel, the court called the jury in and reread two of its earlier instructions. The court reiterated to the jury that to establish a violation of § 924(c) the prosecution was required to prove (1) that Bryant Jones committed a crime of violence and (2) that during and in relation to that crime of violence, Jones knowingly used or carried a firearm (or aided and abetted another person in doing so). The court also reminded the jury that "the term 'firearm' means any weapon, including a starter gun, which will or is designed to, or may readily be converted to expel a projectile by the action of an explosive." J.A. 607. The court rejected defense counsel's request that it instruct the jury that it must find that Jones used or carried a .380, but the court reminded the jury that its verdict must be based only on the evidence presented at trial.

After his conviction, Jones filed several pro se motions, including a Rule 33 motion for a new trial based on newly discovered evidence. The court denied the motions and the case proceeded to sentencing. At the sentencing hearing, Jones argued for a three-level downward departure based on substantial post-offense efforts at rehabilitation, but the district court refused to depart on that basis. The court sentenced Jones to 60 months and 87 months, respectively, on Counts I and II, to run concurrently, and 60 months on Count III to run consecutively to the sentences on the first two counts.

II.

Jones first contends that under Rule 404(b) of the Federal Rules of Evidence, the district court erred in admitting evidence of the Hechinger's robbery and the gun disposal evidence. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to

prove the character of a person in order to show action in conformity therewith." Such "other crimes" evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). To be admissible, prior acts evidence must be (1) relevant to some issue other than character; (2) necessary; (3) reliable; and (4) such that its probative value is not substantially outweighed by the possibility of confusion or unfair prejudice. *See, e.g.*, *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). A district court's decision to admit evidence under Rule 404(b) is discretionary, and will not be overturned unless it was "arbitrary or irrational." *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995).

## A.

The evidence of the Hechinger's robbery satisfies the requirements for admissibility under Rule 404(b). First, it was relevant to an issue other than character. Jones was charged with conspiracy to commit bank robbery, an essential element of which is an agreement between two or more persons to commit that crime. *See United States v. Ellis*, 121 F.3d 908, 922 (4th Cir. 1997). "The more similar the extrinsic act . . . is to the act involved in committing the charged offense, the more relevance it acquires," *Queen*, 132 F.3d at 996, and there are many similarities between the Hechinger's robbery and the Central Fidelity robbery that make evidence of the former relevant to the agreement element of the conspiracy charge.

The most critical similarity was that Jones committed the Hechinger's robbery with two of the same three people with whom he had committed the Central Fidelity robbery, namely Seneca Elliot and John Lewis. In addition to the identity of the perpetrators, the *modus operandi* of both robberies was virtually the same. Elliot carried the same .380 handgun in both the Hechinger's robbery and the Central Fidelity robbery, and Jones was also armed in both. Lewis was the getaway driver in both robberies, and in both the Hechinger's robbery and the Central Fidelity robbery the group used a stolen car as the getaway vehicle. During both robberies, the perpetrators wore dark clothes and masks, and both were early morning robberies that took place shortly after the target businesses opened. Furthermore, the

development of both the Hechinger's robbery and the Central Fidelity robbery began with an exchange of terse, cryptic messages between members of the group. With regard to the Hechinger's robbery, for example, Elliot testified that it was set in motion when Jones called him and asked whether Elliot was "trying to do something," which Elliot understood to be an invitation to "rob something." J.A. 320. Similarly, with respect to the Central Fidelity robbery, it began when Luttrell and Jones pulled up to Elliot's house and told Elliot and Lewis "we got something." J.A. 227.

In short, the fact that Elliot, Lewis, and Jones were all involved in both the Central Fidelity robbery and the Hechinger's robbery, and the fact that the *modus operandi* of both robberies was nearly identical, lead us to conclude that the Hechinger's robbery evidence was relevant to the charged conspiracy. *See United States v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998) ("Evidence is relevant if it has any tendency to make the existence of any determinative fact more probable than it would be absent the evidence."). More specifically, it was relevant to whether Jones had entered into an express or implied agreement with at least Elliot and Lewis to rob businesses when the opportunity presented itself, as it did on March 6, 1997, when the three joined Howard Luttrell in robbing Central Fidelity.

Jones argues, however, that the evidence of the Hechinger's robbery was neither necessary nor reliable, and that, at any rate, it was unduly prejudicial. His necessity argument is simply that the government did not need the evidence of the Hechinger's robbery in order to prove any of the charged offenses. This argument misunderstands the nature of the necessity inquiry. Evidence is necessary for Rule 404(b) purposes when "it is probative of . . . an element of the offense." *Queen*, 132 F.3d 997. As we have already concluded, evidence of the Hechinger's robbery was probative of whether Jones had entered into an implied or express agreement to commit the Central Fidelity robbery.

Jones contends that the evidence was not reliable because it was supplied by the testimony of "three convicted felons who ha[d] reached plea agreements with the government . . . and who had been granted use immunity." Brief of Appellant at 15. Again, we disagree. Evidence is reliable for Rule 404(b) purposes unless it is "so prepos-

terous that it could not be believed by a rational and properly instructed juror." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996) (internal quotation marks omitted). Otherwise, where the evidence is "sufficient to allow the jury to reasonably conclude that the [prior] acts occurred and that the defendant was the actor," it passes the reliability prong of a 404(b) analysis. *Van Metre*, 150 F.3d at 350 (internal quotation marks and alteration omitted). Jones was certainly free to argue to the jury that the testimony of his alleged co-conspirators lacked credibility and should not be believed, but that evidence passes the reliability test of Rule 404(b). A rational and properly instructed jury could easily conclude that the Hechinger's robbery took place and that Jones participated.

Nor is Jones's challenge to the prejudicial effect of the Hechinger's robbery evidence well taken. Evidence is unduly prejudicial if there is "a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Wells*, 163 F.3d 889, 896 (4th Cir. 1998) (internal quotation marks omitted). This is not such a case. The prosecution introduced evidence of a single prior robbery that had been committed within the same general time frame as the Central Fidelity robbery and was similar to that robbery in many respects. To the extent that the evidence was prejudicial to Jones, its prejudice was directly proportional to its probative force. We do not think that the evidence of the Hechinger's robbery would lead the jury to subordinate reason to passion.

### B.

Jones also contends that it was improper under Rule 404(b) to admit evidence that he played a part in disposing of the .380 handgun approximately one month after the robbery. Sometime after the Central Fidelity robbery, Luttrell, Elliot, and Lewis robbed a local pawnshop, taking, among other things, several firearms. The stolen firearms were stashed in a bag along with the .380 that was used in the pawnshop robbery, and the bag was kept at Lisa Homer's apartment. Homer, who had been a friend of Jones for several years, testified that after Luttrell was arrested for the pawnshop robbery, she called Jones to come to her apartment and take the firearms. Jones arrived at the apartment and Homer got into his car, bringing with her

the bag containing the firearms. Jones pulled the .380 from the collection of firearms and handed it back to Homer. There was evidence that Jones expressly told Homer to get rid of the gun, and although Jones attempts to make much of some minor ambiguities and inconsistencies in Homer's testimony on that point, one thing is certain — Homer did just that. She and a friend took a ride during which the .380 was tossed into the Potomac River.

The .380 that Jones singled out for different treatment was the only .380 in the bag, and both Luttrell and Elliot testified that it was the same .380 that was used in both the pawnshop robbery and the Central Fidelity robbery. The prosecution was certainly entitled to argue that, having participated in the Central Fidelity robbery, Jones knew that the .380 had been used in that robbery. In so many words, the prosecution's closing argument suggested to the jury that in singling out the .380 and returning it to Homer for disposal, Jones was attempting to eliminate evidence that would tie him to the robbery of Central Fidelity, thus effectively taking an affirmative step in furtherance of the conspiracy to rob that bank. *Cf. Ellis*, 121 F.3d at 922 (listing among the "overt acts performed in furtherance of the conspiracy [to commit bank robbery]" the fact that the defendant "ordered others to burn the clothing they had worn during the robbery"). The gun disposal evidence thus was intrinsic evidence of the charged conspiracy and therefore was admissible. *See United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996). Moreover, Jones's claim that the .380 that was thrown in the river was not in fact the same gun that was used in the bank robbery was an issue that could have been explored on cross-examination, but it does not affect the admissibility of the evidence. Accordingly, we affirm the district court's admission of that evidence, as it was both relevant to the conspiracy charge and not unduly prejudicial.

### III.

Jones also challenges the admission of Agent Timko's testimony regarding co-conspirator Lewis's prior consistent statements. Rule 801(d)(1)(B) of the Federal Rules of Evidence provides that "a statement is not hearsay," and is admissible as substantive evidence, "if the declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is consistent

with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Fed. R. Evid. 801(d)(1)(B); *see also Tome v. United States*, 513 U.S. 150, 156-57 (1995). It is the fourth requirement, *i.e.*, that there have been "an express or implied charge against [Lewis] of recent fabrication or improper influence or motive," that Jones contends was not satisfied in this case.

On cross-examination, defense counsel asked Lewis several questions suggesting that there was some link between the content of Lewis's testimony and an alleged desire on Lewis's part to curry favor with the government in any eventual criminal proceedings related to the Central Fidelity robbery. For example, counsel suggested that Lewis had heard that there were some impending arrests at the time he confessed, the implication being that Lewis did so to put himself in a favorable bargaining position. Counsel also brought up the plea agreement that Lewis executed, suggesting that Lewis expected to receive a "time cut" for helping to prosecute Jones. J.A. 387. As the district court found, counsel's questions concerning Lewis's testimony suggested that Lewis was "making it up" in order to obtain favorable treatment for himself. J.A. 438. Thus, the question is whether Lewis confessed before the alleged motive to fabricate arose. *See Tome*, 513 U.S. at 157-58 ("[T]he question is whether [the declarant's] out-of-court statements rebutted the alleged link between [her motive to fabricate] and her testimony. . . . A consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive.").

Agent Timko testified that at the time Lewis confessed, the Central Fidelity case had been closed for just over a year and that the FBI did not have any suspects. According to Agent Timko, the case had been closed as "an unsolved bank robbery matter," meaning that the FBI "didn't identify who the robbers were." J.A. 434. When Lewis confessed, the FBI still did not know the identity of any of the Central Fidelity bank robbers. Agent Timko's testimony was corroborated by Lewis's own testimony that he had not heard that any arrests were imminent and otherwise knew nothing about the status of the investigation. In addition, Lewis's statements to Timko were made well before he entered into the plea agreement. Having heard all the evidence, the court concluded that Lewis's statements to Timko were

made "at a time when the case was closed, at a time when the Government had no investigation ongoing and didn't know who did it." J.A. 443-44. The court concluded that Agent Timko's testimony regarding the confession was therefore admissible to refute the implication that Lewis knew the status of the investigation and made a confession implicating Jones before being approached by law enforcement in an attempt to get one step ahead in the plea bargaining process. In light of its factual conclusions, which are not clearly erroneous, the district court's decision to admit Agent Timko's testimony under Rule 801(d)(1)(B) was not an abuse of discretion. *See United States v. Robinson*, 275 F.3d 371, 383 (4th Cir. 2001) ("We review the admission of evidence by the district court for abuse of discretion."), *cert. denied*, ___ S. Ct. ___, 2002 WL 422876 (April 15, 2002).

IV.

Jones next contends that, by virtue of its jury instructions, the district court constructively amended the indictment. Jones's theory is that, since Count III in the indictment specifically stated that the firearm used or carried for purposes of the § 924(c) charge was a .380 semi-automatic pistol, the court was required to instruct the jury that it must find beyond a reasonable doubt that such a firearm was in fact used or carried. Again, we disagree.

A constructive amendment to an indictment — unconstitutional under the Fifth Amendment's guarantee of indictment by grand jury — occurs where "the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, broadens the bases for conviction beyond those charged in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). In *United States v. Redd*, 161 F.3d 793 (4th Cir. 1998), we faced a similar challenge to the one now raised by Jones. In that case, the defendant (Redd) was indicted under § 924(c) and the indictment specifically alleged that Redd had used or carried a black revolver. The jury convicted, and Redd argued on appeal that the prosecution had constructively amended the indictment by offering proof that he had used a silver colored handgun. This court rejected that argument because "[w]hether the gun was black or silver is irrelevant to the question of whether one was used during the robbery." *Id.* at 796.

We see no meaningful basis upon which to distinguish *Redd* from the case at hand. The district court's instructions adequately informed the jury of the elements of the offense and did not broaden the bases upon which the jury could find Jones guilty. Whether the gun was a .380 semi-automatic pistol is simply irrelevant to the question of whether Jones was guilty of violating § 924(c). *See also United States v. Robison*, 904 F.2d 365, 368-69 (6th Cir. 1990) (upholding the trial court's instruction that "it is not necessary that the government prove that the defendant carried the exact firearm alleged in the indictment; rather it is sufficient that the government prove that the defendant carried any firearm" because "the specific type of firearm used or possessed . . . is not an essential element of the crime"). Like the Sixth Circuit in *Robison*, we conclude that Jones was not prejudiced by any variance between the indictment and the court's instructions.

V.

Jones next argues that his conviction must be set aside because it is based on perjured testimony. In a nutshell, Jones identifies some inconsistencies between statements that a few witnesses made before trial and the testimony those witnesses gave at trial. From these inconsistencies (about which Jones contends the prosecution must have been aware), Jones infers that the prosecution must have knowingly presented false or perjured testimony. Again, we cannot agree. Mere inconsistency does not establish falsehood, *see United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987) (stating that "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony"), and Jones has otherwise failed to establish that the testimony given at trial about which he complains, which was largely corroborated in all material respects, was false, much less perjured. Nor has Jones shown that the prosecution was willfully attempting to deceive the court or the jury. In short, Jones has not come close to making the kind of showing necessary to support the grave claim of prosecutorial misconduct he asserts. *See id.* at 970-71 (setting out the requirements for proving a due process violation based on the government's use of false testimony).

VI.

Jones's remaining claims can be resolved more summarily. First, Jones claims that the district court erred in rejecting his request for

a downward departure based on post-offense efforts at rehabilitation. The district court expressly recognized its authority to depart on those grounds, however, and its refusal to do so is therefore not reviewable on appeal. *See United States v. Brock*, 108 F.3d 31, 33 (4th Cir. 1997) (noting that this court has no authority to review a district court's decision not to depart unless that decision "is grounded upon a belief that the [district] court lacks the legal authority to depart").

Jones also contends that improper statements made by the government during closing argument require reversal of his conviction. We have reviewed the record, however, and find no improper statements. The prosecution merely suggested appropriate considerations for the jury to take into account in assessing witness credibility and did not vouch for or bolster the testimony of its witnesses. *See United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997) (stating that "vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury").

Jones next contends that he is entitled to a new trial based on ineffective assistance of trial counsel. We have reviewed the record and find that ineffective assistance does not conclusively appear on the face of the current record. Accordingly, Jones's claim of ineffective assistance is not cognizable on direct appeal, but rather, must be raised in a collateral proceeding. *See, e.g.*, *United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997).

With regard to Jones's contention that the district court erred in denying his pro se motion for a new trial, we find no such error in the district court's ruling. *See, e.g.*, *United States v. Singh*, 54 F.3d 1182, 1190 (4th Cir. 1995) (noting that this court reviews the denial of a motion for a new trial based on newly discovered evidence for an abuse of discretion).

And finally, citing numerous legal sources that impose affirmative evidentiary disclosure requirements on the prosecution, Jones argues that the federal prosecutors in this case breached those obligations by failing to turn over a state police report. We decline to address this argument. The state police report Jones contends the prosecution

should have disclosed was not a part of the record before the district court, and we previously denied Jones's motion to add it to the record on appeal.

## VII.

Having found Jones's assignments of error meritless, we affirm his convictions and sentences.*

*AFFIRMED*

---

*On March 13, 2002, while this appeal was pending, Jones filed another motion for a new trial. The district court held that the pending appeal deprived it of jurisdiction to entertain the motion and transferred it to this court. By separate order, we vacate the district court's order transferring Jones's recently filed motion to this court and remand for further proceedings. The district court had jurisdiction to rule on that motion notwithstanding the pending appeal and should do so in the first instance. *See United States v. Russell*, 971 F.2d 1098, 1112 n.28 (4th Cir. 1992).