RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0086P (6th Cir.)
File Name: 03a0086p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

*v.*

No. 00-6787

BOBBY MARSHALL ZIDELL,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-20231—Julia S. Gibbons, District Judge.

Argued: August 7, 2002

Decided and Filed: March 21, 2003

Before: MOORE and GILMAN, Circuit Judges; ROSEN,
District Judge.*

————————————

## COUNSEL

**ARGUED:** Thomas Edwards Hansom, LAW OFFICES OF
THOMAS E. HANSOM, Memphis, Tennessee, for
Appellant. Thomas L. Parker, ASSISTANT UNITED

_____

*The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

1

STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Thomas Edwards Hansom, LAW OFFICES OF THOMAS E. HANSOM, Memphis, Tennessee, for Appellant.    Thomas L. Parker, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

ROSEN, D. J., announced the judgment of the court and delivered an opinion, in which MOORE and GILMAN, JJ., concurred except as to Part III.C.2.  As to Part III.C.2., MOORE and GILMAN, JJ., concurred in the result and reasoning of that Part only to the extent that it relies on the doctrine of harmless error to uphold the defendant's conviction and sentence.  MOORE, J. (p. 35), delivered a separate concurring opinion, in which GILMAN, J., joined.

---

**OPINION**

---

ROSEN, District Judge.

### I. *INTRODUCTION*

Defendant/Appellant Bobby Marshall Zidell appeals his conviction and sentence for conspiracy to possess with intent to distribute methamphetamine and attempt to possess with intent to distribute methamphetamine, both in violation of 21 U.S.C. § 846.  Following a trial, the jury returned guilty verdicts against Defendant on both of these charges.  On December 8, 2000, Defendant was sentenced to a 292-month term of imprisonment and 5 years of supervised release.  This timely appeal followed.

Defendant has identified four issues on appeal.  First, he argues that venue was improperly placed in the Western District of Tennessee on the attempt charge set forth in Count Two of the indictment because, in Defendant's view, the Government's evidence showed that all of the criminal conduct relating to this charge occurred in Texas.  Next, Defendant complains that the Government lacked any

---

**CONCURRENCE**

---

KAREN NELSON MOORE, Circuit Judge, concurring. I concur in the result and the reasoning of all parts of the lead opinion other than Part III.C.2. As to Part III.C.2., I concur in the result and in the reasoning to the extent that it relies on the doctrine of harmless error to uphold the defendant's conviction and sentence. Indeed, that section of the opinion simply holds that if there were error, "[i]t is clear that Defendant suffered no adverse consequence whatsoever as a result of the District Court's determination that drug quantity was something other than an element of the charged offenses." (Lead Op. 33-34) I refrain from joining in the remaining discussion within Part III.C.2. because it is unnecessary to the result reached, and because I do not share the lead opinion's musings regarding whether drug quantity is an element of the offense.

consistent as to the amount of methamphetamine purportedly supplied by Defendant during the April 7, 1999 transaction that formed the basis for the Count Two offense. In particular, Cranford and Rook both testified that they received about a pound of methamphetamine from Defendant, and no evidence at trial contradicted this testimony as to drug quantity. Similarly, at sentencing, Defendant challenged the presentence report's assertion that the Count One conspiracy involved 5 to 15 kilograms of methamphetamine, and he more generally continued to deny that he had engaged in any drug trafficking offenses, but he offered nothing to suggest that the offense charged in Count Two might have involved a quantity of drugs different from the one pound charged in the indictment.

Under this record, then, the jury might have credited Defendant's testimony proclaiming his innocence, or it might instead have accepted — and evidently did accept — the accounts offered by Cranford and Rook. No reasonable juror, however, could have found Defendant guilty of an attempt to possess with intent to distribute something ***less than*** one pound of methamphetamine. Stated differently, a jury could not reasonably have voted to acquit as to the one-pound attempt offense charged in the indictment, yet still elected to convict as to the 100-gram offense stated in the jury instructions. Accordingly, the District Court's modification of the Count Two drug quantity cannot be viewed as amending the indictment, because it raises no concern, under the facts of this case, that Defendant might have been convicted of an offense different from the one charged in the indictment. *See Chilingirian*, 280 F.3d at 712; *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989), *cert. denied*, 495 U.S. 918 (1990). Rather, the District Court's error was harmless, and does not warrant reversal of Defendant's Count Two conviction or his overall sentence.

## IV. *CONCLUSION*

For the reasons set forth above, we AFFIRM the conviction and sentence of Defendant Bobby Marshall Zidell.

evidentiary basis for questioning him during cross-examination at trial regarding his alleged attempt to encourage a witness to lie on his behalf.

Defendant's remaining two challenges arise from the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), a decision handed down just days before Defendant's trial. First, Defendant contends that the District Court's instructions to the jury regarding drug quantities failed to comport with *Apprendi*, where the jury was asked to make drug quantity findings, but was told that these quantities were not "elements" of the charged drug offenses, and where the instructions as to Count Two referenced a quantity different from (and lower than) the drug amount set forth in the indictment. Finally, Defendant argues that the District Court erred in calculating and imposing a 292-month sentence based upon an amount of methamphetamine in excess of the quantities charged in the indictment and established through the jury's verdict.

For the reasons stated below, we affirm Defendant's conviction and sentence.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

For purposes of this appeal, only a limited portion of the facts and evidence presented at trial need be recounted here. Count One of the superseding indictment in this case charged Defendant Bobby Marshall Zidell and two co-defendants, Bobby Smith and Kevin Cranford, with conspiring in the period from March, 1998 to April 8, 1999 to possess with intent to distribute "an amount in excess of 1 kilogram of a mixture and substance containing a detectable amount of methamphetamine." (J.A. at 24.) Count Two charged that, from April 1 to April 8, 1999, Defendant and Cranford attempted to possess with intent to distribute "approximately 1 pound of a mixture or substance containing a detectable amount of methamphetamine." (J.A. at 25.) Co-defendants Smith and Cranford both entered guilty pleas as to Count One, and then testified at Defendant's trial.

## A.   The Government's Proofs at Trial

The Government's case rested principally upon the testimony of co-defendants Smith and Cranford and a third individual, Robert Rook, who was identified as a co-conspirator in the indictment but not charged in exchange for his cooperation. Through these witnesses, the Government sought to establish that Defendant, a resident of Dallas, Texas, had supplied methamphetamine to Smith, a native of Memphis, Tennessee who had moved to Dallas, and Cranford and Rook, who still lived in Memphis. Smith testified that he began to supply methamphetamine to Cranford in March of 1998, and that his sources of supply in Dallas were Defendant and "a couple of different Mexicans." (J.A. at 227-30.) Smith estimated that he served as the middleman between Defendant and Cranford "about three or four times," and that each transaction with Defendant involved "2 to 4 pounds" of methamphetamine. (J.A. at 230.)

Smith testified that he began to fall behind in his payments to Defendant, and that, as a solution to this problem, he proposed in October of 1998 that Defendant and Cranford deal directly with each other. Smith introduced Defendant to Cranford at a casino in Tunica, Mississippi, and Cranford testified that Defendant supplied him with four pounds of methamphetamine on that occasion in the fall of 1998. Cranford further testified that he paid Defendant a few thousand dollars at the time of their meeting, and that he sent the balance of the $60,000 payment afterward via Federal Express.

Following this initial meeting, Cranford stated that he had several telephone conversations with Defendant over the next few weeks regarding the payment still owed by Cranford and arrangements for the next shipment. According to Cranford and Robert Rook, this next transaction occurred in late October or early November of 1998, when Defendant met with the two men at a Waffle House in Memphis. Cranford and Rook both testified that, upon arriving at the restaurant, Defendant instructed Rook to retrieve some packages from

convictions and sentences despite a District Court's ***outright failure*** to instruct the jury as to drug quantities. In *Burns*, for example, the indictment listed the quantities allegedly involved in the various charged drug offenses, but the trial court did not instruct the jury to determine these amounts beyond a reasonable doubt, and instead made these findings at sentencing by a preponderance of the evidence. *See Burns*, 298 F.3d at 531, 543. We reviewed the defendants' *Apprendi* challenges under a "harmless error" standard, and concluded that they were not entitled to relief. 298 F.3d at 544-45. Similarly, in *Stewart*, we applied harmless-error analysis to an *Apprendi*-based claim that drug quantities were neither specified in the indictment nor submitted for the jury's determination, and again found that the defendants were not entitled to relief under this standard. *See Stewart*, 306 F.3d at 318-23, 332-35.

Consequently, if the District Court here had altogether removed any reference to drug quantities from its jury instructions, or if the indictment itself had failed to specify such quantities, we would have asked whether this error was harmless and, if so, would have affirmed Defendant's conviction and sentence. It necessarily follows that this same standard governs the analogous but arguably less severe "reduction-in-quantity" error actually committed by the court below — this error can hardly be deemed more "structural" or less amenable to harmless-error review than if the District Court had simply ignored *Apprendi* and applied this Circuit's then-existing rule that drug quantities need not be submitted to the jury. *See Stewart*, 306 F.3d at 321-23. Under this standard, an error is deemed harmless only if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 1837 (1999); *see also Stewart*, 306 F.3d at 323.

We readily conclude that the District Court's change from one pound to 100 grams in its Count Two jury instructions played no role whatsoever in the jury's guilty verdict on this count. The testimony at trial was wholly uniform and

the indictment, determined by the jury beyond a reasonable doubt, and further refined by the District Count in its application of the Sentencing Guidelines. Under these circumstances, *Apprendi* and its progeny do not require that drug quantity be treated as an element of the Count Two offense. *See*, *e.g.*, *Cotton*, 122 S. Ct. at 1785 (characterizing the error in that case as "the indictment's failure to allege a fact, drug quantity, that increased the statutory maximum sentence"); *United States v. Martinez*, 253 F.3d 251, 256 n.6 (6th Cir. 2001) ("*Apprendi* only requires those sentencing factors that increase the penalty *beyond the statutory maximum* to be submitted for proof beyond a reasonable doubt."); *Strayhorn*, 250 F.3d at 468 (indicating that drug quantity must be treated as an element of a § 841 offense, as opposed to a sentencing factor, only where "it subjects the defendant to an enhanced sentence").

Viewed in this way, the District Court's reduction in drug quantity in its Count Two jury instructions amounted to a mere variance from the indictment. In an analogous case involving a firearm offense, we held that the distinction between a .357 Magnum, as specified in the indictment, and a shotgun, as established through the evidence at trial, constituted "a variance, not a constructive amendment, because the specific type of firearm . . . is not an essential element of the crime." *United States v. Robison*, 904 F.2d 365, 369 (6th Cir.), *cert. denied*, 498 U.S. 946 (1990). To obtain relief, Defendant would have to establish that this variance affected his "substantial rights." *See Chilingirian*, 280 F.3d at 712; *Robison*, 904 F.2d at 369. He cannot make such a showing here, given the lack of any impact upon his sentence. *See*, *e.g.*, *Burns*, 298 F.3d at 545; *United States v. Stafford*, 258 F.3d 465, 478-79 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1581 (2002).

Even if the drug quantities in Counts One and Two alike were entitled to treatment as the "functional equivalent" of elements, we still would find no basis for overturning Defendant's conviction or sentence. This conclusion is dictated by our decisions upholding drug trafficking

his car and place them into Cranford's vehicle. Upon returning to Cranford's apartment, Cranford and Rook discovered that Defendant had provided only nine pounds of methamphetamine, and not the twelve pounds that Cranford had anticipated. Cranford also testified that he was dissatisfied with the quality of the drugs supplied by Defendant.

Because of this latter problem, Cranford stated that he was only able to sell about two of the nine pounds of methamphetamine provided by Defendant. As for the remaining seven pounds, Cranford and Rook delivered them to Smith in Little Rock, Arkansas in December of 1998, with the understanding that Smith would return these drugs to Defendant, and that Cranford would then settle up with Defendant as to any amounts owed for the two pounds he had retained. Smith, however, never returned the seven pounds of methamphetamine to Defendant. Rather, Smith testified that he became nervous and threw the drugs in a dumpster. Cranford, on the other hand, stated his belief that Smith repackaged these drugs and included them in a larger shipment that Smith delivered to Cranford a week or so later.

Cranford testified that he next heard from Defendant at the end of January, 1999, when Defendant called to demand his money for the Waffle House transaction. Cranford explained to Defendant what had happened, and the two men purportedly agreed, over the course of several subsequent telephone conversations, to resume their direct relationship without Smith's involvement. According to Cranford, Defendant sent him a quarter ounce of "good quality" methamphetamine via Federal Express as a "sample of what [Defendant] could do," (J.A. at 177-78), and Cranford and Rook then flew to Dallas on April 2, 1999 to obtain additional methamphetamine from Defendant. Cranford stated that Defendant was only able to provide four ounces of drugs on this trip, which Cranford quickly sold upon his return to Memphis.

A few days later, on April 7, 1999, Cranford and Rook again flew down to Dallas to obtain additional methamphetamine from Defendant. Rook and Cranford both testified that they drove directly to Defendant's home upon their arrival in Dallas that evening, and that they were given approximately a pound of methamphetamine. They placed these drugs in a rental car, and began driving back to Memphis. Cranford and Rook were stopped by the police in Hopkins County, Texas, as they traveled along Interstate 30 between Dallas and Little Rock. Upon discovering a gun in the back of the car, the officers placed Rook and Cranford under arrest, and apparently discovered the package of methamphetamine during a subsequent inventory search of the vehicle.

Following his arrest, Cranford initially denied any knowledge of the methamphetamine found in the car. He subsequently agreed to cooperate with law enforcement authorities, however, by participating in two recorded telephone conversations with Defendant. These tapes were played at trial, and Cranford also was asked to explain their contents. Cranford testified that he and Defendant discussed the debt he still owed for the two pounds of methamphetamine he had retained from the Waffle House transaction, and that Defendant indicated a willingness to arrange some additional purchases upon receiving at least some payment toward this debt.

## B.    The Defense at Trial

Defendant called two witnesses at trial, and also testified on his own behalf. In his testimony, Defendant flatly denied that he had ever conspired with Cranford, Smith, or Rook to buy or sell methamphetamine. Although Defendant conceded that he had met with Cranford on the evening of April 7, 1999, he stated that the two had discussed the "mortgage brokerage business" on this occasion, and not any transactions involving methamphetamine. (J.A. at 270.)

One of the issues on appeal concerns a portion of the Government's cross-examination of Defendant at trial. The

It remains only to characterize this error and determine its consequences. The first of these questions leads us right back to the element/sentencing factor quandary, because the modification of an ***element*** of an offense is problematic under our precedents. We recently explained:

> The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury. The constitutional rights of an accused are violated when a modification at trial acts to broaden the charge contained in an indictment. A *variance* [to the indictment] occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. In contrast, an *amendment* involves a change, whether literal or in effect, in the terms of the indictment. This Circuit has held that a variance rises to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.

*United States v. Chilingirian*, 280 F.3d 704, 711-12 (6th Cir. 2002) (internal quotations and citations omitted).

Once again, we find it unnecessary to decide precisely where the District Court's modification of the Count Two drug quantity might fall on this continuum, because it makes no difference to the outcome here. First, while we have recognized that drug quantity was the "functional equivalent" of an element of Count One in light of its sentencing consequences, the same cannot be said for Count Two. Rather, the jury's determination of the amount of drugs involved in the Count Two offense had no impact whatsoever upon Defendant's sentence, because his 292-month term of imprisonment rests solely upon the Count One conspiracy conviction, including that count's drug quantity as charged in

instructions to the jury, so long as these adjustments did not affect the statutory sentencing ranges faced by Defendant. In particular, the trial court reasoned that the jury's findings should be calibrated to the drug-quantity ranges set forth in §§ 841(b)(1)(A) and (B), rather than the amounts stated in the indictment. As to Count One, this course of action made no difference — the threshold quantity of methamphetamine necessary to trigger the § 841(b)(1)(A) 10-years-to-life sentencing range happened to be one kilogram (as of 1998; it is now 500 grams), the same amount actually set forth in the indictment. The same cannot be said, however, for Count Two — the indictment stated that this attempt offense involved "approximately 1 pound" of methamphetamine, (J.A. at 25), or roughly 440 grams, but the jury was instructed to determine whether the offense involved "100 grams or more" of methamphetamine, (J.A. at 67), as this was (as of 1998) the lower bound of the quantity range found at § 841(b)(1)(B).

In contrast to the District Court's element/sentencing factor determination, this modification of the Count Two quantity is more readily characterized as erroneous. There is no apparent source from which a District Court could derive the authority to, in essence, "reverse engineer" jury instructions tailored to the statutory drug-quantity ranges, even where the indictment itself fails to mirror these ranges. Certainly, *Apprendi* would be a poor place to look for any such authority. While that decision and its progeny might be read as imposing *additional* requirements upon the Government as to matters which must be set forth in an indictment, *see United States v. Cotton*, 122 S. Ct. 1781, 1785 (2002) (noting the Government's concession in that case that "the indictment's failure to allege a fact, drug quantity, that increased the statutory maximum sentence rendered [the defendants'] enhanced sentences erroneous under the reasoning of *Apprendi*"), *Apprendi* surely does not *relieve* the Government of its fundamental, pre-existing obligation to prove the material allegations actually contained in the indictment.

Government first established that a woman named Dita Ghaemi was a friend of Defendant's, and that Ms. Ghaemi, in turn, was friends with Chandra Smith, the wife of co-defendant Bobby Smith. (*See* J.A. at 272.) The Government then inquired whether Defendant had "asked Dita Ghaemi to contact Chandra to see if Chandra Smith would lie for you and testify that you had nothing to do with the sale of narcotics." (J.A. at 272.) Defendant emphatically denied this charge. He acknowledged that Ms. Ghaemi had offered to talk to Ms. Smith, but he testified that he responded to this offer by stating that this "would be an obstruction of justice," and by instructing Ms. Ghaemi not to proceed "in my behalf in any way, shape, form or fashion." (J.A. at 273.) Defense counsel made no objection to this line of inquiry, but did object to a subsequent question in which the Government apparently was about to ask why Ms. Ghaemi had not been called as a witness. (*See* J.A. at 273.)

## C.    Procedural Background

The trial in this case commenced on July 10, 2000, just a few days after the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). Accordingly, the District Court was left with the unenviable task of determining how the jury should be instructed as to drug quantities in the wake of *Apprendi*, without the benefit of any subsequent case law addressing the proper interpretation of this Supreme Court ruling.

At the close of proofs, the District Court heard the arguments of counsel on this matter, and then arrived at a solution somewhat different from that proposed by either party. As to Count One, the Court read a traditional drug conspiracy instruction to the jury, and then addressed the issue of drug quantity as follows:

You will recall that the indictment alleges that a particular quantity of controlled substance was involved in the conspiracy. While the government does not have to prove this exact quantity as an element of the offense, it does have to establish the quantity beyond a reasonable

doubt for other purposes. For this reason, if you find defendant guilty of the conspiracy offense, you will need to make a separate finding concerning the quantity of controlled substance. Specifically, you must determine whether the government has proved beyond a reasonable doubt that 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine was the amount of controlled substance that defendant conspired to possess with intent to distribute or to distribute.

(J.A. at 62-63.)

The Court's instructions to the jury as to Count Two were similar, with one distinction. As noted earlier, the indictment charged that this offense involved "approximately 1 pound of a mixture or substance containing a detectable amount of methamphetamine." (J.A. at 25.) This one-pound figure would translate into approximately 440 grams. The Court, however, instructed the jury that the relevant quantity was "100 grams or more," and that it was this amount, and not a pound, that the jury should address in its deliberations, provided that it first determined that Defendant was guilty of the attempt offense charged in the indictment. (J.A. at 67.)

In explaining these instructions on Count Two, the District Court reasoned that "[t]he impact of *Apprendi* is that the jury has to find the statutory [sentencing] factor beyond a reasonable doubt." (J.A. at 282.) Because the 440-gram amount charged in the indictment exceeded the 100-gram quantity that triggered an enhanced statutory sentencing range under 21 U.S.C. § 841(b)(1)(B), but was less than the 1-kilogram amount that would trigger the maximum sentencing range under § 841(b)(1)(A),[1] the Court concluded that

---

[1] These 100-gram and 1-kilogram cutoff amounts are derived from the statute as it read in early 1998, at the time of the commencement of the drug conspiracy charged in Count One of the indictment. The statute was amended in October of 1998 to lower these cutoff amounts to 50 grams and 500 grams, respectively. *See* 21 U.S.C. §§ 841(b)(1)(A)(viii),

Defendant suffered no adverse consequences whatsoever as a result of the District Court's determination that drug quantity was something other than an element of the charged offenses. Notwithstanding this characterization, the District Court accorded full "elemental" treatment to the drug quantity charged in Count One of the indictment, in the only senses required by *Apprendi* and its progeny: the jury, and not the court, was assigned the duty of determining whether the Government had proven the relevant quantity, and the jury was instructed that this determination must be made beyond a reasonable doubt.[9] We have searched in vain, then, for any constitutional infirmity in the District Court's statement to the jury that drug quantity was not an element of the crimes charged in the indictment. Rather, we conclude that the jury instructions, "taken as a whole, fairly and adequately submit[ted] the issues and applicable law to the jury," *Alvarez*, 266 F.3d at 594, and this is all that is required under our precedents.

**3.    The District Court Erred in Altering the Drug Quantity Set Forth in Count Two of the Indictment, But This Error Was Harmless.**

The District Court's instructions on the Count Two offense, however, add another wrinkle to our inquiry. Having determined that the drug quantities set forth in the indictment were not elements of the charged offenses, the District Court apparently believed itself free to alter these quantities in its

---

I emphasize that this is merely my own view on this subject, and that my colleagues on the panel do not join in it. Accordingly, we do not decide whether drug quantity is an "element" of the offenses charged in the indictment, but ask only whether the District Court sufficiently treated drug quantity as the "functional equivalent" of an element of the Count One conspiracy offense to warrant the use of this fact in sentencing Defendant beyond the default 20-year statutory maximum.

[9] Moreover, to the extent that *Apprendi*, *Harris*, or other Supreme Court or Sixth Circuit precedent might require it, we note that the indictment in this case specified the amounts of drugs allegedly involved in the charged offenses.

Yet, this fact **was** submitted to the jury, and found to be proven beyond a reasonable doubt. The only sense in which drug quantity was **not** treated as an element in this case, then, was in the District Court's failure to label it as such in the jury instructions. We need not (and do not) decide whether this was error,[8] because it is clear that

---

[8]My own view is that it was not. *Harris*, after all, acknowledges the legislature's prerogative to assign the labels of "element" and "sentencing factor," while reserving to the judiciary the determination whether a fact designated a "sentencing factor" by the legislature nonetheless must be treated as an "element" for Sixth Amendment purposes. *See Harris*, 122 S. Ct. at 2410, 2417-19. Thus, it is first and foremost a matter of statutory construction to ascertain whether Congress made drug quantity an element or a sentencing factor under 21 U.S.C. § 841. Upon undertaking this analysis, we have held that § 841(b) "sets forth penalty provisions only and not separate 'lesser included' offenses." *United States v. Moreno*, 899 F.2d 465, 473 (6th Cir. 1990). The District Court properly could have relied on this precedent in instructing the jury that drug quantity was not an element of the charged offenses.

I do not read *Apprendi* as having any impact upon this issue of statutory interpretation. Rather, as *Harris* explains, *Apprendi* recognizes only a specific constitutional check upon the legislature's power to designate facts as sentencing factors rather than elements — the legislative prerogative is overridden where the fact in question "increases the penalty for a crime beyond the prescribed statutory maximum." *Harris*, 122 S. Ct. at 2410 (quoting *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63). In this event, a sentencing factor must be treated like an element — that is, submitted to the jury for determination beyond a reasonable doubt. This, of course, is precisely what the District Court did here.

Indeed, I view our own post-*Apprendi* decisions as recognizing this point, albeit only implicitly. On one occasion, for example, we stated that the three subsections of 21 U.S.C. § 841(b)(1) set forth "three different crimes, with three differing elements (weight of drugs)." *United States v. Flowal*, 234 F.3d 932, 938 (6th Cir. 2000), *overruled on other grounds by Leachman*, 309 F.3d at 383. Yet, in that same case, we indicated our approval of the practice employed by the lower court here — namely, instructing the jury to "make a special finding as to the weight of the drugs." *Flowal*, 234 F.3d at 937 n.3. *Flowal* arguably used the term "element," then, as descriptive of the proper treatment of drug quantity — that is, it must be submitted to the jury in order to trigger an elevated statutory maximum under § 841(b)(1).

---

*Apprendi* would be satisfied, and that an enhanced statutory sentencing range could be applied, so long as the jury determined beyond a reasonable doubt that the attempt offense charged in Count Two involved at least 100 grams of methamphetamine. Accordingly, even though the indictment specified a greater quantity, the District Court found that this was not an element of the offense, and it elected to "use what's in the statute, not what's charged in the indictment," (J.A. at 281), in its instructions to the jury.[2]

The jury then was presented with a verdict form in which it was first asked to determine whether Defendant was guilty or not guilty as to Count One. If Defendant was found guilty on this count, the jury was asked to decide whether "the government [had] proved beyond a reasonable doubt that 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine" was involved in the conspiracy. (J.A. at 44.) Similarly, as to Count Two, the jury was asked to determine whether Defendant was guilty of the charged attempt offense and, if so, whether the Government had proved beyond a reasonable doubt that this offense involved 100 grams or more of methamphetamine. (*See* J.A. at 44.) In a verdict returned on July 27, 2000, the jury found Defendant guilty on Counts One and Two, and answered affirmatively that the charged offenses had involved, respectively, at least 1 kilogram and at least 100 grams of methamphetamine.

A presentence report prepared after these convictions recommended a sentencing range of 360 months to life imprisonment, based on a determination that the Count One conspiracy had involved 5 to 15 kilograms of methamphetamine, plus a four-level enhancement for

---

841(b)(1)(B)(viii).

[2]The Court also expressed surprise that the Government would propose to charge the jury as to the specific drug quantities set forth in the indictment, as "that means if you've not proved the quantity that you set out to prove, you don't have a conviction." (J.A. at 281.)

Defendant's purported role as an organizer or leader of the conspiracy. In his objections to the presentence report, Defendant again asserted that the District Court's jury instructions violated *Apprendi*, and he further argued that the probation officer's determination of drug quantity rested upon the unreliable testimony of cooperating witnesses Smith and Cranford, and that a leader or organizer enhancement likewise was not supported in the record at trial.

The District Court addressed these objections at a sentencing hearing held on December 8, 2000. The Court adhered to its prior view of *Apprendi*, and opined that the characterization of drug quantity as an element or sentencing factor was "completely immaterial," where "the jury in this case was told [that] the fact [of drug amount] had to be proved beyond a reasonable doubt." (J.A. at 329-30.) The Court noted that the jury's determination on this point triggered a statutory sentencing range of 10 years to life imprisonment, and it found that the trial record supported the higher 5-to-15-kilogram drug quantity determination set forth in the presentence report. The Court agreed with Defendant, however, that an organizer or leader enhancement was unwarranted, resulting in a modified Sentencing Guideline range of 292 to 365 months. Defendant then was sentenced at the bottom of this range, a 292-month term of imprisonment, followed by a five-year period of supervised release.

A judgment embodying this sentence was entered on December 15, 2000. Defendant now appeals his conviction and sentence.

### III.  *ANALYSIS*

**A.  Venue Was Proper in the Western District of Tennessee as to Count Two of the Indictment.**

As his first issue on appeal, Defendant argues that venue was not properly placed in the Western District of Tennessee as to Count Two of the indictment, and that the District Court erred in failing to grant his motion for judgment of acquittal

statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.

*Apprendi*, 530 U.S. at 494 n.19, 120 S. Ct. at 2365 n.19.

The Court's more recent decision in *Harris* both confirms and clarifies this principle. There, the Supreme Court explained that "[t]he Constitution permits legislatures to make the distinction between elements and sentencing factors, but it imposes some limitations as well." *Harris*, 122 S. Ct. at 2410. The Court viewed *Apprendi* as stating one such limitation: "'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum,' whether the statute calls it an element or a sentencing factor, 'must be submitted to a jury, and proved beyond a reasonable doubt.'" *Harris*, 122 S. Ct. at 2410 (quoting *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63). Likewise, in *Ring v. Arizona*, 122 S. Ct. 2428, 2441 (2002), the Court again emphasized that any characterization of a fact as an element or a sentencing factor must yield to the constitutional command that a jury decide any such facts that "increas[e] punishment beyond the maximum authorized by a guilty verdict standing alone."

Under this standard, regardless of whether Congress denominated drug quantity as an "element" or a "sentencing factor" under the federal drug statutes, it is evident that the drug quantity set forth in Count One of the indictment here was the "functional equivalent" of an element of Defendant's actual offense of conviction: conspiracy to possess with intent to distribute over one kilogram of methamphetamine. Absent a jury finding of this quantity beyond a reasonable doubt, Defendant could have been sentenced only within the 20-year statutory maximum for drug conspiracy offenses involving an indeterminate amount of methamphetamine. Because his sentence exceeds this maximum, drug quantity was a necessary "element" of the Count One offense, in the sense that it had to be submitted to the jury in order to sustain an enhanced sentence.

*United States v. Simms*, 285 F.3d 1098, 1100 (8th Cir. 2002); *United States v. Moreci*, 283 F.3d 293, 297-99 (5th Cir. 2002); *United States v. Brown*, 154 F. Supp.2d 1055, 1064-65 (E.D. Mich. 2001). Thus, we conclude that the "specific quantity or more" findings made by the jury in this case did not trigger a violation of *Apprendi*, where these determinations served to fix the statutory sentencing range faced by Defendant, and no additional findings at sentencing expanded this range in any way.

**2.    Any Error in the District Court's Characterization of Drug Quantity Had No Effect upon Defendant's Conviction or Sentence.**

Nevertheless, two other aspects of the jury instructions in this case warrant further discussion. First, upon determining in light of *Apprendi* that the issue of drug quantity should be submitted to the jury, the District Court instructed that drug quantity was not an "element" of the charged offenses, but instead had to be established "for other purposes." (J.A. at 62, 67.) Defendant maintains that the District Court erred in failing to designate drug quantity as an "element." We, however, are considerably more hesitant to pronounce this an "error." In any event, we readily conclude that the District Court's handling of this matter provides no basis for upsetting Defendant's conviction or sentence.

Our hesitation on this point derives from the somewhat elusive and context-driven distinction between "elements" and "sentencing factors." In *Apprendi* and subsequent decisions, the Supreme Court adopted a functional approach to this inquiry, at least for purposes of Sixth Amendment analysis. *Apprendi* explains:

The term ["sentencing factor"] appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized

on this ground. We review *de novo* the trial court's denial of a motion for judgment of acquittal. *See United States v. Wall*, 130 F.3d 739, 742 (6th Cir. 1997). In conducting this review, we view the evidence in the light most favorable to the prosecution, and inquire whether a rational trier of fact could find that venue is proper. *See Wall*, 130 F.3d at 742. The Government's showing on this point need only be supported by a preponderance of the evidence. *See United States v. Thomas*, 74 F.3d 701, 709 (6th Cir.), *cert. denied*, 519 U.S. 820 (1996).

Before reaching the merits of this issue, we first address the Government's contention that Defendant waived any objection to improper venue by failing to timely raise this issue in the court below. As the Government points out, Defendant did not specifically identify venue as an issue in his initial motion for judgment of acquittal at the close of the Government's proofs. Instead, his counsel generally stated:

Very briefly, Your Honor, I make a motion for judgment of acquittal on both counts of the indictment due to the failure of the government to make out each and every element of a prima facie case of each and every charge.

(J.A. at 258.) Nor did defense counsel mention venue after the close of all the evidence, stating simply that "I need to renew my motion." (J.A. at 284.) Rather, the first explicit reference to venue is found in a memorandum in support of Defendant's post-trial renewal of his motion for judgment of acquittal. (*See* J.A. at 73.) The Government argues that this post-trial objection came too late to preserve this issue on appeal.

The law of this Circuit indicates otherwise, though not definitively. To be sure, while Defendant challenged the Government's purported failure to "make out each and every element" of the charged offenses, (J.A. at 258), this cannot be viewed as a direct challenge to venue, because venue is not properly considered a true "element" of a criminal offense. *See United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984);

*United States v. Branan*, 457 F.2d 1062, 1065-66 (6th Cir. 1972). Nevertheless, this Court has indicated, albeit only in dicta, that a general challenge to the Government's proofs in a Rule 29 motion for judgment of acquittal suffices to preserve the issue of venue, and that only a more specific Rule 29 motion operates to waive all grounds not specified. *See United States v. Dandy*, 998 F.2d 1344, 1356-57 (6th Cir. 1993), *cert. denied*, 510 U.S. 1163 (1994). In stating this view, we quoted with approval from *United States v. Rivera*, 388 F.2d 545, 548 (2d Cir.), *cert. denied*, 392 U.S. 937 (1968), which distinguished between general and specific motions to acquit, and found that the former type of motion "might [be] assume[d]" to encompass venue. *See Dandy*, 998 F.2d at 1357. In this case, Defendant's initial motion is readily characterized as general — indeed, it is hard to see how it could be more so — and thus does not preclude us from considering his challenge to venue.

Turning to the merits of this issue, however, we find that the record amply supports the Government's determination to prosecute Defendant in the Western District of Tennessee. Count Two of the indictment charged that Defendant and Kevin Cranford, "each being aided and abetted by the other and by Robert Rook, did attempt to possess with the intent to distribute and attempt to cause the possession with intent to distribute approximately 1 pound of a mixture or substance containing a detectable amount of methamphetamine." (J.A. at 25.) From the Government's proofs at trial, and from the reference in the indictment to the time period between April 1 and April 8, 1999, it is evident that the offense charged in Count Two arose from the April 7, 1999 transaction in which Cranford and Rook traveled to Defendant's home in Dallas, Texas and were given approximately a pound of methamphetamine, whereupon they began driving back to their point of origin in Memphis, Tennessee. This conduct gave rise to an attempt charge, as opposed to a charge of a completed drug distribution offense, when Rook and Cranford were stopped by the police before they reached their intended destination.

For similar reasons, we find no merit in the contention, arguably raised in Defendant's brief on appeal, that the District Court erred in failing to instruct the jury to determine the precise quantities of methamphetamine involved in the charged offenses, and instead allowing the jury to return a verdict based on threshold amounts of drugs — namely, "1 kilogram or more," as to Count One, and "100 grams or more," as to Count Two. (*See* J.A. at 44.) This Court has held, albeit without discussion, that sentences based upon a jury's finding of "at least" a threshold drug quantity do not violate *Apprendi*. *See United States v. Hough*, 276 F.3d 884, 890-91 (6th Cir.), *cert. denied*, 122 S. Ct. 1986 (2002); *United States v. Alvarez*, 266 F.3d 587, 598 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 2298 (2002). We explained in *Hough* that *Apprendi* does not require "that the precise amount of drugs must always be submitted to the jury;" rather, it suffices that the jury finds beyond a reasonable doubt "the minimum amount of drugs specified in the indictment," and that the ultimate sentence does not exceed the statutory maximum for this amount. *Hough*, 276 F.3d at 890.

Indeed, a demand for greater specificity in drug quantity determinations would be impossible to square with our decisions rejecting *Apprendi*-based challenges where the jury found only a detectable or unspecified amount of a controlled substance, or was not even asked to make a drug quantity finding, but where the resulting sentence fell below the default maximum set forth at § 841(b)(1)(C). *See, e.g.*, *Copeland*, 304 F.3d at 554-55; *United States v. Burns*, 298 F.3d 523, 543-44 (6th Cir. 2002); *Hough*, 276 F.3d at 891. These cases involve, in essence, a "zero or more" determination by the jury, which is legally indistinguishable from the "one kilogram or more" and "100 grams or more" findings in the present case. We note, finally, that two of our sister Circuits and a District Court in this Circuit have expressly held that a jury need not determine an exact quantity of drugs in order to satisfy *Apprendi*, and that a less precise finding that falls within one of the ranges specified at §§ 841(b)(1)(A) or (B) is sufficient to sustain a sentence at or below the relevant subsection's statutory maximum. *See*

triggered an enhanced 10-years-to-life statutory sentencing range, *see* 21 U.S.C. § 841(b)(1)(A),[7] and Defendant's sentence lies within this range. Moreover, the jury was instructed to determine, in a "separate finding," whether the Government had "proved beyond a reasonable doubt that 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine was the amount of controlled substance that defendant conspired to possess with intent to distribute or to distribute." (J.A. at 62-63.) The verdict form reflects the jury's affirmative response to this query. (*See* J.A. at 44.)

Given this jury finding beyond a reasonable doubt that the Count One conspiracy involved a drug quantity in excess of one kilogram, Defendant's sentence properly rests upon this portion of the verdict alone, even without consideration of the jury's guilty verdict as to Count Two. Beyond this, it does not matter whether, as Defendant argues in his fourth issue on appeal, the term of imprisonment imposed by the District Court reflects further drug quantity findings at sentencing by a preponderance of the evidence — specifically, 5 to 15 kilograms of methamphetamine, (*see* J.A. at 340) — that triggered an enhanced Sentencing Guideline range of 292 to 365 months. Rather, we have repeatedly held that *Apprendi* permits such a procedure at sentencing, so long as the resulting sentence does not exceed the statutory maximum established through the jury verdict alone. *See Lawrence*, 308 F.3d at 634-35; *Copeland*, 304 F.3d at 555; *United States v. Garcia*, 252 F.3d 838, 843 (6th Cir. 2001). Such is the case here, where the findings at sentencing operated solely to narrow the 10-years-to-life statutory sentencing range previously triggered by the jury's drug quantity findings. Accordingly, we reject this aspect of Defendant's appeal to *Apprendi*.

---

[7]Currently, amounts in excess of 500 grams trigger the statutory maximum of life imprisonment under § 841(b)(1)(A). However, the District Court used the one-kilogram amount set forth in the statute prior to October of 1998, and the Government does not contest this ruling.

In arguing that venue was improperly placed in the Western District of Tennessee as to this charge, Defendant notes that the Government's proofs established that he supplied the drugs in question solely in Texas, and without traveling to Memphis. Be that as it may, the events of relevance to this attempted drug distribution offense are not so narrowly circumscribed. This Court and others have observed that "[p]ossession with intent to distribute a controlled substance is a continuing offense." *United States v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993), *cert. denied*, 510 U.S. 1109 (1994); *see also United States v. Uribe*, 890 F.2d 554, 559 (1st Cir. 1989); *United States v. Baskin*, 886 F.2d 383, 388 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1089 (1990); *United States v. Stitzer*, 785 F.2d 1506, 1519 (11th Cir.), *cert. denied*, 479 U.S. 823 (1986). *See generally United States v. Colon*, 268 F.3d 367, 377 (6th Cir. 2001) (holding that "distribution" of a controlled substance under federal drug law "includes other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price"). Accordingly, the determination of venue is governed by the "continuing offense" statute, which provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *see also Medina*, 992 F.2d at 587; *United States v. Turner*, 936 F.2d 221, 226 (6th Cir. 1991) (stating that drug trafficking offenses "are not completed until the drugs reach their final destination, and [that] venue is proper in any district along the way" (internal quotations and citation omitted)). To satisfy the terms of this statute, it is not essential that the defendant ever have been physically present in the district in question, so long as "the offense continued into" this district. *Medina*, 992 F.2d at 587.

The trial record, viewed most favorably to the prosecution, leaves no room for doubt that the Western District of Tennessee was among the districts in which the offense charged in Count Two was "begun, continued, or completed." According to the Government's witnesses, Defendant traveled

to Memphis in the latter part of 1998, providing methamphetamine to Rook and Cranford during a meeting at a Waffle House. This transaction apparently strained the relationship between the parties, with Cranford expressing dissatisfaction with the quantity and quality of the drugs, while Defendant reportedly complained that he had not been paid. Defendant eventually reestablished the relationship with Cranford through a series of telephone calls between Dallas and Memphis beginning in January of 1999, and through a trial shipment of a quarter ounce of methamphetamine from Dallas to Memphis via Federal Express. Cranford testified that these dealings essentially defined the terms of the parties' subsequent transactions in early April of 1999 — namely, that Defendant would provide "good quality" methamphetamine, and that Cranford would sell these drugs in Memphis as a means of repaying his outstanding debt to Defendant. (*See* J.A. at 176-79.) Based on this understanding, Cranford and Rook traveled from Memphis to Dallas on two occasions in close succession, on April 2 and April 7, 1999, in order to obtain additional supplies of methamphetamine from Defendant for distribution in Memphis.

From this evidence, a factfinder reasonably could have concluded that the attempted distribution offense charged in Count Two had its beginnings in Defendant's trip to the Waffle House in Memphis, as well as the principals' subsequent negotiations between Dallas and Memphis as they aired their respective complaints about the Waffle House transaction. The trial record also would support the conclusion that the offense continued in Memphis, at least in part, as this was the point of departure for Cranford and Rook on April 2 and 7. The two men indicated at trial that they were induced to travel to Dallas by Defendant's offer to supply them with methamphetamine — and, indeed, Defendant apparently made good on this promise during both of these trips. Finally, although the plans of Cranford and Rook were thwarted by their arrests, their testimony plainly evidences their aim to return to Memphis to complete the intended offense — *i.e.,* the distribution of the methamphetamine received from Defendant — and Defendant

**1. Defendant's Sentence Does Not Exceed the Maximum Authorized by the Jury Verdict Alone.**

In cases like this one, involving drug trafficking offenses tried before a jury, we have interpreted *Apprendi* as requiring that a defendant be sentenced within the default range set forth at 21 U.S.C. § 841(b)(1)(C) — *i.e.,* not more than 20 years' imprisonment, increased to a 30-year maximum if the defendant has a prior felony drug conviction — unless the jury determines beyond a reasonable doubt that the offense involved a quantity of drugs that triggers an enhanced statutory maximum under §§ 841(b)(1)(A) or (B). *See e.g.*, *United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002); *United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000).[6] In the present case, the District Court imposed a 292-month term of imprisonment, a sentence which exceeds the 20-year default statutory maximum for a drug offense involving an indeterminate amount of methamphetamine. *See* 21 U.S.C. § 841(b)(1)(C).

Under these circumstances, *Apprendi* demands that we ask whether this sentence can be achieved solely through the findings of the jury beyond a reasonable doubt. There is no doubt that it can. Count One of the indictment charged that Defendant conspired to possess with the intent to distribute "an amount in excess of 1 kilogram of a mixture and substance containing a detectable amount of methamphetamine." (J.A. at 24.) This one-kilogram amount

---

[6]Until recently, this Court had read *Apprendi* as applying to statutory minimum as well as maximum sentences, so that a defendant could not be sentenced to a mandatory minimum term of imprisonment, even one which was at or below a permissible statutory maximum, if this sentence was triggered by the trial court's drug quantity findings by a preponderance of the evidence. *See, e.g.*, *United States v. Humphrey*, 287 F.3d 422, 447 (6th Cir. 2002); *United States v. Strayhorn*, 250 F.3d 462, 469-70 (6th Cir. 2001). We have since concluded, however, that this more expansive reading of *Apprendi* did not survive the Supreme Court's recent ruling in *Harris v. United States*, 122 S. Ct. 2406 (2002). *See, e.g.*, *United States v. Leachman*, 309 F.3d 377, 383 (6th Cir. 2002); *Lawrence*, 308 F.3d at 635; *Copeland*, 304 F.3d at 553.

## C. Any Errors in the District Court's Application of *Apprendi* Were Harmless.

Defendant's final two arguments on appeal both involve the impact of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), upon his conviction and sentence. In particular, Defendant contends that the jury instructions bearing upon drug quantity failed to comport with *Apprendi*, and that the District Court erred in sentencing him by reference to a quantity of drugs in excess of that determined by the jury beyond a reasonable doubt. These issues are related, and will be addressed together.

As noted, *Apprendi* was decided shortly before Defendant's trial, and the District Court and counsel expressly addressed this ruling's effect upon the jury instructions and sentencing. Accordingly, we review *de novo* the lower court's resolution of the *Apprendi*-related issues at trial and sentencing. *See United States v. Stewart*, 306 F.3d 295, 312 (6th Cir. 2002).[5] Regarding the specific matter of jury instructions, this review entails consideration "whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *United States v. Alvarez*, 266 F.3d 587, 594 (6th Cir. 2001) (internal quotations and citations omitted), *cert. denied*, 122 S. Ct. 2298 (2002).

---

[5] It is true, as the Government points out, that defense counsel was somewhat vague in objecting to the District Court's proposed treatment of the *Apprendi* decision. At the close of proofs, defense counsel professed that "I'm still unclear as to [*Apprendi*'s] impact, and perhaps I'm unclear as to its meaning," and then "object[ed] generally to the court's proposed instruction," without identifying any specific defects. (J.A. at 283.) Nevertheless, the issue undeniably was raised during the trial proceedings — and, of course, defense counsel is hardly to be faulted for some degree of uncertainty as to the meaning of *Apprendi*. *Cf. Apprendi*, 530 U.S. at 540, 120 S. Ct. at 2389 (O'Connor, J., dissenting) (opining that "there appear to be several plausible interpretations of the constitutional principle on which the Court's decision rests"). In any event, Defendant again raised the issue at sentencing, (*see* J.A. at 328-29), thereby providing a separate basis for our *de novo* review. *See United States v. Copeland*, 304 F.3d 533, 554-555 (6th Cir. 2002).

surely would have been aware of this plan from his past dealings with Cranford. In short, the record establishes venue in the Western District of Tennessee under any of the "begun, continued, or completed" prongs of 18 U.S.C. § 3237(a).

More generally, we have evaluated challenges to venue under a "substantial contacts" test, which calls for consideration of "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding." *United States v. Williams*, 274 F.3d 1079, 1084 (6th Cir. 2001) (internal quotations and citations omitted). Even assuming that Defendant could be viewed as acting solely in Dallas — a supposition that would ignore the several occasions on which he reached out or even traveled to Memphis, including the Waffle House transaction, his telephone negotiations with Cranford, and the Federal Express shipment — this factor would be counterbalanced by consideration of the nature of the charged offense, which entails both possession *and* intent to distribute. The effects of the attempted distribution, if successful, would have been felt in Memphis, and this factor has sufficient weight in this case to satisfy our "substantial contacts" inquiry.

The D.C. Circuit's decision in *United States v. Kwong-Wah*, 924 F.2d 298, 301-02 (D.C. Cir. 1991), is instructive for both its similarities to and its distinctions from the present case. In that case, as here, the defendant was charged with one count of conspiring to distribute a controlled substance, and also a substantive count of attempted distribution of a controlled substance. The defendant challenged venue in the District of Columbia as to the attempted distribution charge, where the attempted transaction took place in New Jersey and "all of [the defendant's] conduct in connection with the attempt occurred either there or in New York," but where co-defendants had "negotiated about the transaction . . . in D.C." 924 F.2d at 301. The defendant conceded that venue was proper as to the conspiracy charge, but argued that "a similar standard should not apply to venue for an attempt and that the absence of any act in D.C. by [the defendant] himself [was]

fatal to the government's assertion of venue there." 924 F.2d at 301.

Although the D.C. Circuit agreed that venue was improper, its reasoning would support a contrary conclusion here. First, the Court found sufficient evidence that "the attempted distribution was 'begun' in D.C. when [the defendant's] co-conspirators negotiated the terms of the deal and [provided] . . . samples of the heroin they intended to distribute." 924 F.2d at 301. This, in the Court's view, "was sufficient to constitute a 'substantial step' toward the attempted distribution." 924 F.2d at 301. Yet, in that case, these acts in the District of Columbia were performed by accomplices rather than the defendant himself, and so did not necessarily suffice to establish proper venue as to the defendant. Here, in contrast, Defendant was a direct participant in the equivalent "substantial steps" toward the attempted distribution, through the Waffle House transaction, his Federal Express shipment to Memphis of a sample quantity of methamphetamine, and his telephone negotiations with Cranford in Memphis.

The D.C. Circuit next addressed the possible application of the established rule that the defendant, as an aider and abettor, could be tried in the district where the principal committed the offense. The Court found this principle unavailing, where "the government, in fact, failed to specify, either in the indictment or at trial, that it was prosecuting [the defendant] on the theory that he was an aider and abettor as opposed to a principal," and where "the jury was not instructed on the issue." 924 F.2d at 302. Under this record, the Court was "unable to infer that a defendant . . . accused only of attempt, aided or abetted the prior actions of other persons in other judicial districts." 924 F.2d at 302. "If the government wishes to establish venue for an attempt in a district where the defendant did nothing but where the defendant's confederates committed criminal acts, it is required to argue and prove that the defendant specifically aided and abetted those acts and to request that the jury be instructed on the issue." 924 F.2d at 302.

In any event, Defendant has failed to demonstrate that the Government's questioning rose to the level of "plain error" that prejudiced the fairness of his trial. The Government explored the topic of witness tampering only briefly, and, in accordance with Rule 608(b), accepted Defendant's flat denial on its face, without seeking to introduce extrinsic evidence that might contradict his testimony. In order to find prejudice in this exchange between the Government's counsel and Defendant, we would have to conclude that the jury necessarily credited the Government's questions over Defendant's responses, and that a mere inquiry about witness tampering, though promptly denied, was enough to affect the outcome of the lower court proceedings. Nothing in the record supports either of these propositions. To the contrary, given the trial court's instruction that "the statements and questions of the lawyers are not evidence," (J.A. at 46), we presume that the jury did not draw any inappropriate conclusions from the Government's brief inquiry on this point.

Next, to the extent that Defendant challenges his counsel's failure to object to this line of questioning, the Government correctly notes that we typically decline to consider ineffective assistance of counsel claims on direct appeal, because the record usually is not sufficiently developed to permit proper assessment of such claims. *See United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997). Such is clearly the case here, where no record exists as to whether, for example, the Government had a good faith basis for believing that Defendant might have engaged in witness tampering. Because the resolution of Defendant's challenge turns upon facts and considerations outside the present record, we adhere to our usual practice, leaving Defendant to reassert this argument if he wishes in a post-conviction proceeding under 28 U.S.C. § 2255.

(J.A. at 272-73.)  As noted, defense counsel did not interpose any objection to this line of questioning.[4]

On its face, the Government's inquiry was wholly permissible under Fed. R. Evid. 608(b), which authorizes, "in the discretion of the court," cross-examination of a witness "concerning the witness' character for truthfulness or untruthfulness."    The Government asserts, without contradiction by Defendant, that an attempt to secure perjured testimony would bear upon Defendant's character for truthfulness or untruthfulness.  *See United States v. Hurst*, 951 F.2d 1490, 1501 (6th Cir. 1991) (upholding the cross-examination of a defendant regarding conduct amounting to subornation of perjury), *cert. denied*, 504 U.S. 915 (1992). Although the courts have required that there be a "good faith basis" for cross-examination under Rule 608(b), Defendant's lack of objection at trial deprived the District Court of any opportunity to determine whether such a basis existed, and hence precludes any meaningful consideration of this question by this Court. *See United States v. Simonelli*, 237 F.3d 19, 23 (1st Cir.), *cert. denied*, 122 S. Ct. 54 (2001).  Likewise, we are hindered in our effort to determine whether the District Court abused its discretion in permitting this line of inquiry, where Defendant never called upon the trial court to exercise its discretion in this matter.

---

[4]Counsel did object, however, to a subsequent question in which the Government apparently was about to inquire why Defendant had not called Ms. Ghaemi as a witness. (*See* J.A. at 273.)  The District Court expressed some skepticism about this objection, both because the Government had not yet commented on the failure to call this witness, but had only "asked half a question," and because, in the Court's view, the Government had the "right to argue about the quality of th[e] proof" put forward by Defendant.  (J.A. at 273-74.)  The District Court was not called upon to resolve this issue, however, since the Government agreed to abandon this line of inquiry.

It is not clear from his brief on appeal whether Defendant means to challenge the trial court's handling of this matter.  Any such challenge would lack merit, however, in light of defense counsel's prompt objection before the Government could even finish its question, and in light of the Government's agreement not to proceed with this inquiry.

Again, the situation is different here, even if it is assumed that Defendant "did nothing" in the Western District of Tennessee with regard to the offense charged in Count Two. First, the indictment in this case charged that Defendant and Cranford "each [were] aided and abetted by the other and by Robert Rook," (J.A. at 25), and this language was incorporated into the jury instructions, (*see* J.A. at 63). Arguably, then, this could bring Defendant within the rule that permits venue for an aiding and abetting offense to be determined by reference to the acts of the principal.  On the other hand, we note that the "aiding and abetting" aspect of Count Two was not further amplified in the remainder of the jury instructions, and the Government's proofs cannot readily be viewed as casting Defendant in the role of aider and abettor rather than principal.

More importantly, the indictment in this case charged that Defendant both "attempt[ed] to possess with the intent to distribute" *and* "attempted *to cause the possession* with intent to distribute" methamphetamine.  (J.A. at 25 (emphasis added).)    This "cause" language derives from a second subsection in the federal aider and abettor statute, 18 U.S.C. § 2,[3] which provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."   18 U.S.C. § 2(b).   This provision was designed, in the words of one court, to "remove[] all doubt that one who sets an illegal course in motion but intentionally refrains from the direct act constituting the completed offense shall not escape punishment." *United States v. Sabatino*, 943 F.2d 94, 99 (1st Cir. 1991) (internal quotations and citation omitted).

The jury in this case was expressly and separately instructed on this "cause the possession" theory of criminal culpability. (*See* J.A. at 63, 65-66.)  In addition, the Government's proofs were wholly consistent with the theory that Defendant, though

---

[3]This statute was expressly cited in Count Two of the indictment.

he might not have planned to personally distribute methamphetamine on the occasion in question, surely set this "illegal course in motion" by supplying methamphetamine to Cranford and Rook with full knowledge of what they intended to do with it — and, more importantly, *where* they intended to take it for the purpose of unlawful distribution. This aspect of the record, then, provides an additional basis for upholding venue in the Western District of Tennessee on the basis of the acts of others, and particularly co-defendant Kevin Cranford, even assuming that Defendant himself did nothing that might independently warrant the placement of venue in that district. Consequently, we affirm the District Court's disposition of Defendant's challenge to venue.

**B.   There Was No Plain Error in the Government's Cross-Examination of Defendant.**

As his next assignment of error, Defendant asserts that he was deprived of a fair trial when the Government inquired during his cross-examination, allegedly without any factual basis, whether he had attempted to secure a witness's false testimony on his behalf. Defendant concedes that his counsel did not object to this line of questioning at trial. Consequently, our review on this issue is governed by the "plain error" standard. *See* Fed. R. Crim. P. 52(b); *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992). An error is "plain" if it is "clear under current law" and "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777-78 (1993). In addition, our authority to correct a plain error is discretionary, and should be employed only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S. Ct. at 1779 (internal quotations and citation omitted).

Defendant's present challenge arises from the following exchange during his cross-examination at trial:

Q:   Mr. Zidell, do you know Dita Ghaemi?

A:   Yes, sir, I do.

Q:   She's a friend of yours?

A:   Yes, sir, she is.

Q:   She's someone that you brought with you to Memphis when we had the jury selection portion of this trial?

A:   She accompanied me, yes, sir.

Q:   She sat right there on the front row during the jury selection?

A:   Yes, sir.

Q:   She's also a friend of Chandra Smith's [*i.e.,* the wife of co-defendant Bobby Smith], isn't she?

A:   Yes, sir.

Q:   Mr. Zidell, you asked Dita Ghaemi to contact Chandra to see if Chandra Smith would lie for you and testify that you had nothing to do with the sale of narcotics, didn't you do that, sir?

A:   Quite the contrary, sir.

Q:   You had Dita call Chandra —

A:   No, sir.

Q:   Is it your testimony that Dita did not call Chandra?

A:   No, sir, that's not what I said. I said I did not ask her to call, change any testimony or anything else. I explained to her, she asked me what was going on. I began to explain it to her. She said, "Would you like me to talk to Chandra?" I told her that would be an obstruction of justice, not in my behalf in any way, shape, form or fashion.